Nov. Term, 1851.

HARPER
v.
DELP.

HARPER *v.* DELP.

| 3 | 225 |
| 154 | 320 |

In an action of slander, where there is ambiguity in the words laid in the declaration, in regard to the person slandered, there must be an introductory averment showing that the plaintiff was the person aimed at.

To say of a man that he was seen ravishing a cow, imports that he was seen committing the crime of bestiality and buggery with the cow.

In the declaration in the present case, words alleged to have been spoken of the plaintiff were, that he had been seen a foul of a cow. *Held,* that they did not warrant an *innuendo* that he was guilty of bestiality. *Held,* also, that if the defendant had been in the practice, by the words laid, of imputing the crime of bestiality, or, if he had used them on the occasion alleged in that sense, and they were so understood by the hearers, there should have been a special averment to that effect.

Words charged to have been spoken by the defendant, were alleged in the declaration as follows: *R.* (meaning, &c.,) saw a young man (meaning the plaintiff) ravishing a cow. My son *R.,* (meaning, &c.,) on his way home to his father's, between *S.'s* shop and his father's, saw a man ravishing a cow, (meaning the plaintiff, &c.) *Held,* that the words did not show, with sufficient certainty, that the plaintiff was the person whom the defendant intended to slander.

The following words were alleged in the declaration to have been spoken by the defendant: *R* (meaning, &c.,) saw him (meaning the plaintiff) ravishing, &c. *Held,* that the word *him* sufficiently demonstrated the person of the plaintiff. *Held,* also, that a formal *colloquium* stating that the words were spoken *in a conversation* of and concerning the plaintiff was unnecessary.

APPEAL from the *Parke* Circuit Court.

BLACKFORD, J.—This was an action for slanderous words,

Saturday, *December* 6.

alleged to have been spoken of the plaintiff, *William Harper*, by the defendant, *Jonas Delp*.

The declaration contains three counts, each of which was specially demurred to. The demurrers were sustained, and judgment rendered for the defendant.

The first count states that before and at the time of the committing of the grievances thereinafter mentioned, the plaintiff resided in the neighborhood of the defendant, in *Sugar Creek* township, in the county of *Parke*, and was then and there a young man lately married, and had not by his wife any children; that the plaintiff was then and there the only young married man in the neighborhood of the plaintiff and defendant, in said township, who had no children after marriage; that one *Andrew Scott*, then and there, had a blacksmith-shop between the defendant's house and the house of one *Sarah Clove*, of said township; that a person in traveling from said *Clove's* house to that of the defendant, by the way of said shop, so as to leave the house of one *Martin Harper*, the plaintiff's father, to the right, would pass by and near to the plaintiff's house, which would be the first house on said route after passing said shop; and that the plaintiff was, for a long time before, to-wit, for the space of six months, and at the time of the committing of the grievances thereinafter mentioned, the only young married man without children by his marriage, who lived in the neighborhood of said shop, and whose house would be on the route from said *Clove's* house to the house of the defendant, between said shop and the house of one *John Summers*, who also then and there resided upon said route.

This count further states that the defendant, well knowing the premises, but contriving and maliciously intending to injure the plaintiff, and to cause it to be suspected and believed that he had been guilty of bestiality and buggery, as thereinafter stated to have been imputed to him by the defendant, theretofore, to-wit, on, &c., at, &c., in a certain discourse which he, the defendant, then and there had of and concerning the plaintiff, of and concerning the crime of bestiality and buggery, and of and con-

Nov. Term,
1851.

HARPER
v.
DELP.

cerning the time when, and place where, and person by whom, the said crime was alleged to have been committed, in the presence and hearing of one *David Allen* and others, then and there, in the presence and hearing of those persons, falsely and maliciously spoke and published of and concerning the plaintiff, of and concerning the crime of bestiality and buggery, and of the time when, and place where, he alleged the same to have been committed, the false, scandalous, malicious, and defamatory words following, that is to say:

" That his son *Rial* (meaning *Erial Delp*, the defendant's son), on the week before, had staid at *Sarah Clove's*, (meaning the *Sarah* before mentioned,) and on the way home (meaning on the way from the house of said *Sarah Clove* to the house of the defendant), he (meaning said *Erial*) saw a young man a ravishing a cow. He (meaning said *Erial*) went by *Scott's* shop, and left *Martin Harper's* farm on the right, (meaning thereby that said *Erial*, in going from said *Sarah's* as aforesaid to the defendant's house, had gone by said blacksmith-shop of said *Scott*, and had left the residence of said *Martin Harper*, the plaintiff's father, on his, said *Erial's*, right); and that between the shop and *John Summers's* the act took place, (meaning thereby that the crime of bestiality and buggery with a cow, had been committed between said blacksmith-shop and the residence of said *John Summers*); that this was a young married man, and his wife had no children, and not like for any; and that it was so early in the morning that a person could not have got far from home." Thereby, then and there, meaning that the plaintiff had been and was guilty of the crime of bestiality and buggery with a cow.

This first count further states that the defendant, by the speaking and publishing of said words, intended to charge, and did charge, the plaintiff with the crime of bestiality and buggery with a cow; that the defendant designed to give, and did give, by said words, such a description of the plaintiff, the place where he lived, &c., as to inform the persons to whom he was speaking as aforesaid, that

he was then and there speaking of and concerning the plaintiff; and that said persons to whom said words were spoken and published as aforesaid, did, by said words, understand the defendant to be speaking and publishing said words of and concerning the plaintiff, and to charge the plaintiff with the crime of bestiality and buggery with a cow, and to have been seen at the act by *Erial Delp*, the defendant's son.

By means whereof, the plaintiff has been greatly injured, &c.

The first cause of demurrer to the first count, is as follows: It is not averred that the words were spoken of and concerning the plaintiff.

The answer to this objection is, that there is such an averment. The count states that the defendant, well knowing the premises, &c., theretofore, &c., in a certain discourse which he then and there had of and concerning the plaintiff, &c., in the presence and hearing of one *David Allen* and others, then and there, in the presence and hearing of those persons, falsely and maliciously spoke and published *of and concerning the plaintiff*, &c., the false, scandalous, malicious, and defamatory words following, &c. That is as express an averment on the subject as could be made.

The second cause of demurrer is as to the sufficiency of the *colloquium*.

It was, no doubt, necessary that the count should show that the words were applicable to the plaintiff. It was for that purpose alone, that the inducement was inserted. If the words are here shown to be so applicable, then this part of the declaration is unobjectionable. In ordinary cases, it is sufficient on this subject to aver that the words were spoken of and concerning the plaintiff. But we understand the rule to be, where, as in the case before us, there is an ambiguity in the words laid, in regard to the person slandered, there must be an introductory averment showing that the plaintiff was the person aimed at. The following cases will illustrate this rule. In a very early case it was said: "If one saith the parson of *Dale* hath

committed such a robbery, an action upon the case for these words well lieth, if he aver in his declaration that he was the parson of *Dale* when the words were spoken." Per *Doddridge*, Justice, in *Lewis* v. *Walter*, 3 Bulstrode's Rep. 225. There is another case as follows: Action for words. Whereas the defendant's wife having communication with *J. S.*, of the plaintiff, and intending to deprive him of his good name and fame, and draw him into peril of his life, such a day and year spoke of the plaintiff these words: "Go tell my landlord (*innuendo* the plaintiff) he is a thief, and I will cause him (*innuendo* the plaintiff) to be hanged." Verdict for the plaintiff, and motion in arrest of judgment. The question was, whether the declaration should not have averred that the plaintiff was the defendant's landlord. The judges were, at first, equally divided on the point; but they finally advised the plaintiff to relinquish that action, and amend this fault in the second one. Ordered accordingly. *Spencer* v. *Medburne et ux.*, Cro. Charles, 420. We will refer to one other case. The words there were: "Your master and dame stole rugs and quilts." A suit was brought by the master; and the declaration is set out in the report of the case. The only allegations in the declaration, to show that the plaintiff was the person intended, are, that the words were spoken of the plaintiff, and that the person to whom they were spoken was, at the time, the plaintiff's servant. The declaration was objected to on the ground that it did not show that the person addressed was the plaintiff's servant at the time of the discourse. The Court, however, thought that that fact was shown, and overruled the objection. *Upton* v. *Pinfold et ux.*, Comyn's R. 267.

In the count now under consideration, there is a *colloquium* of the plaintiff, and an averment that the words were spoken and published of him. There is, also, a prefatory averment descriptive of the plaintiff. The words alleged to have been spoken say, that the guilty person resided not far from the place where the offense was committed, and they describe that place. The words also say, that the guilty person was a young married man

whose wife had no children. It appears, by the prefatory averment, that at the time the words were spoken, the plaintiff lived in the neighborhood of the place where the words say the offense was committed; that he was, at the same time, a young married man whose wife had no children; and that there was no other young married man in that neighborhood whose wife had no children. We are satisfied, upon comparing these descriptions, that the declaration shows that the words laid were spoken of and concerning the plaintiff. This point could not have been made clearer by any difference in the form of the *colloquium*. There is no ground, therefore, for the second cause of demurrer.

The third cause of demurrer to the first count is, that the following *innuendo*, to-wit, " thereby then and there meaning that the plaintiff had been and was guilty of the crime of bestiality and buggery with a cow," is not warranted by the precedent matter. The words alleged in the first count to have been spoken of the plaintiff are, that he had been seen ravishing a cow.

The defendant contends that the words, ravishing a cow, do not ordinarily mean the having of sexual or carnal knowledge of her; but we are of a different opinion. The first definition given in *Johnson's* Dictionary of the word ravish, as a verb, is, " to constuprate by force; to deflour by violence;" and the definition given of the word constuprate is, " to violate, to debauch, to defile." In *Webster's* Dictionary, one of the definitions of the word ravishing is, " compelling to submit to carnal intercourse." The word ravish has, no doubt, other significations; but when used in the connection it here is—when it is said that a man was seen ravishing a cow—we must consider the natural meaning of the words to be, that the person so seen was committing the crime of bestiality and buggery with the cow.

The second count is very similar to the first, and is unobjectionable.

The third count commences as follows: And afterwards, to-wit, on, &c., at, &c., in a certain other discourse which

the defendant then and there had, in the presence and hearing of divers other good and worthy citizens of said state, the defendant further contriving and intending as aforesaid, then and there, in the presence and hearing of said citizens, falsely and maliciously spoke and published, of and concerning the plaintiff, the false, slanderous, malicious, and defamatory words following, that is to say, &c. This count here sets out various sets of words, to all of which there is appended the following *innuendo*, to-wit, "meaning that the plaintiff was then and there guilty of the crime of bestiality." This count contains no introductory averment; nor does it state that the words were spoken *in a discourse* of and concerning the plaintiff.

The causes of demurrer are, 1. There is no allegation that the words were spoken of and concerning the plaintiff; 2. There is no special inducement or *colloquium* to support the *innuendoes*.

We have, for convenience, arranged the sets of words in this third count into classes.

The following are in the first class, namely: He (meaning the plaintiff) was seen a foul of a cow. *Rial* (meaning, &c.,) saw him (meaning the plaintiff) a foul of a cow. *Rial* (meaning, &c.,) that morning caught him (meaning the plaintiff) a foul of a brute. *Harper* (the plaintiff meaning) was caught by my son *Rial* a foul of a brute.

We do not think that any of the sets of words just named are actionable in themselves. The statement that the plaintiff had been caught a foul of a cow, does not warrant the *innuendo* that he was guilty of the crime of bestiality. The most usual signification of the word foul, as an adjective, is, unclean, filthy, dirty. The phrase "to fall foul" is not an uncommon one. The definition of it, given in *Webster's* Dictionary, is, to rush on with haste, rough force, and unreasonable violence; to run against, as the ship fell foul of her consort. Dr. *Johnson* gives the following example—In his sallies, their men might fall foul of each other. If the defendant had been in the practice, by the words laid, to impute the crime of bestiality, or if he had used them, on this occasion, in

Nov. Term,
1851.

HARPER
v.
DELP.

that sense, and they were so understood by the hearers, there should have been a special averment to that effect. *Angle* v. *Alexander*, 7 Bingh. 119.—*McGregor* v. *Gregory*, 11 Meeson and Welsby, 287.—*O'Brien* v. *Clement*, 16 Meeson and Welsby, 159.—*Hays* v. *Mitchell*, 7 Blackf. 117.

The following sets of words are in the second class: *Rial* (meaning, &c.,) saw a young man (meaning the plaintiff) ravishing a cow. My son *Rial* (meaning, &c.,) on his way home to his father's, between *Andrew Scott's* shop and his father's, saw a man ravishing a cow, (meaning the plaintiff, &c.).

These sets of words in the second class are objectionable, on the ground that none of them show, with sufficient certainty, that the plaintiff was the person whom the defendant intended to slander. The words, "a young man," and, "a man," which are the only words used to designate the person, do not point to the plaintiff more than to any other young man or man whatever. Whether this uncertainty could have been remedied by an averment, we need not stop to inquire.

The following sets of words are in the third class: *Rial* (meaning, &c.,) saw him (meaning the plaintiff) ravishing a cow. My son *Rial* (meaning, &c.,) saw him (meaning the plaintiff) ravishing a cow. *William Harper* (the plaintiff meaning) was caught by my son *Rial* in the act of ravishing a cow.

We have already, in speaking of the first count, expressed an opinion that words like those here laid are actionable. We must, however, notice the special causes of demurrer. The first, namely, that there is no allegation that the words were spoken of and concerning the plaintiff, is not warranted by the facts. The count does, in express terms, contain such an allegation.

The second cause of demurrer, namely, that there is no special inducement or *colloquium* to support the *innuendoes*, cannot be sustained. There is here no ambiguity as to the person of the plaintiff. The first set of words is, *Rial* (meaning, &c.,) saw *him* (meaning the plaintiff) ravishing, &c. The second set is substantially the same.

Nov. Term, 1851.

HARPER
v.
DELP.

The word *him* sufficiently demonstrates the person. There is an old case on this subject as follows: Action for these words: He (*innuendo* the plaintiff) is not worthy, &c. Exception was taken that the *he* might be spoken of any other, and that the *innuendo* would not help it. But the Court held that the action well lay, for *hic* and *ille* make a demonstration what person he intended, and it is alleged that he spoke *de querente* those words. *Taylor* v. *How*, Croke's Eliz. 861. In the third set of words, the plaintiff's name is given. There being then no ambiguity as to the person slandered, and the words being actionable, no special inducement would be necessary. Nor was any *colloquium* of the plaintiff necessary; that is, the formal *colloquium* stating that the words were spoken *in a conversation* of and concerning the plaintiff. The averment, which is, also, frequently called a *colloquium*, to-wit, that the words were spoken of and concerning the plaintiff, is indispensable; and that, as we have already observed, is contained in this count. The language of Mr. *Starkie*, on this subject, is as follows: "Formerly it was the practice to aver, that the defendant spoke the words *in a certain discourse* which he had with others, or with the plaintiff himself in the presence of others, concerning the plaintiff. This was technically called laying a *colloquium*, and till the case of *Smith* v. *Ward*, Croke's James, 673, it seems to have been doubted whether a declaration without a *colloquium* would be good. In that case, it was alleged that the defendant said of the plaintiff, 'He (*innuendo* the plaintiff) is a thief;'" and the Court, on being informed that it was the common course to declare that he said *de præfato querente hæc verba*, held it to be sufficient without a *colloquium*." 1 Starkie on Slander, 383, 384.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for further proceedings not inconsistent with this opinion.

*J. A. Wright* and *E. W. McGaughey*, for the appellant.

*S. F. Maxwell, T. H. Nelson*, and *J. P. Usher*, for the appellee.

(1) The R. S. 1852 have enacted, that, " In an action for libel or slander, it shall be sufficient to state generally that the defamatory matter was published or spoken of the plaintiff; and if the allegation be denied, the plaintiff must prove, on the trial, the facts showing that the defamatory matter was published or spoken of him." R. S. 1852, vol. 2, p. 45. This statute is similar to that of *New York.* The statute of *New York* has been held to dispense with the allegation of extrinsic facts showing *the application of the words to the plaintiff,* but not to dispense with the necessity of an averment or innuendo, when it becomes essential to show the *meaning of the words themselves. Pike v. Van Wormer,* 5 Practice R. 171. When the meaning of the words is so ambiguous that extrinsic facts are necessary to be proved to show them to be actionable at all, the necessity of stating these facts by an explicit averment is precisely the same as it has always been. *Fry* v. *Bennett,* 1 Code Rep. N. S., 238. Even though it may be uncertain to whom the words were intended to apply, it is no longer necessary to insert in the complaint any averments [of extrinsic facts] showing that they were intended to apply to the plaintiff. But, in other respects, the same averments are requisite, in pleading under the code, as at common law. *Pike* v. *Wormer,* 6. Practice R. 99.