*J. W. Burton, S. H. Taylor,* and *J. H. O'Neall,* for appellees.

---

## KEESLING *v.* McCALL.

SLANDER.—*Pleading.*—*Malice.*—In an action for slanderous words spoken of the plaintiff, it is a sufficient charge of malice to aver that "the defendant spoke, uttered, and published the false, scandalous, malicious, and defamatory words following."

SAME.—*Actionable Words and Prefatory Matter.*—Where the plaintiff lived near to and north of the defendant, and the defendant said in regard to some wheat stolen the night before, in answer to a question as to which way the wheat stolen went, "I think it went north. Tom McCall" (the plaintiff) " was here twice the day before to get seed wheat. He enquired whether it was clean enough to sow without being cleaned again. Now I don't want anything to go out from me, that I said that Tom McCall stole the wheat, for I don't know who stole it, but it looks suspicious," it was held that the words were actionable, taken with the prefatory matter. So also were the words, " I saw the man steal my wheat, and saw the way he went, he went across the field north, and it was nobody but Tom McCall."

SAME.—Where there had been a difficulty between the plaintiff and defendant, that still caused ill feeling, and defendant said, " The wheat did not go very far. I would not doubt that it went across the field (nodding his head towards plaintiff's). It looks very suspicious that it went that way, for me and him are not very good friends ;" the words were, with the extrinsic facts, held sufficient; also the words, " Tom McCall is the man, and nobody else, that stole my wheat. I saw the man who took it, and can't be mistaken."

SAME.—*Names.*—*Averments.*—Where it was alleged that the plaintiff in that neighborhood was known by all the community as " Walnuts " and as "the man who deals in walnuts," and the words used were, " I know the man who took my wheat ; I know all about it. I saw him take it. You all know him.

It is the man they call Walnuts;" and again these words: "The man who trades in walnuts stole my wheat;" and again these words: "The man who trades in walnuts took my wheat," and it was not alleged that the persons to whom the words were spoken knew the plaintiff by these names or that they lived in the neighborhood, but that they were "divers good and worthy persons of the county," the words, with the averments, were held not sufficient to sustain an action.

.SAME.—*Evidence.*—*Impression.*—Under the allegation that the words, "me and .him aren't very good friends," were used, it was proper to introduce proof ⟨of a difficulty between the parties, to identify the one of whom they were ·uttered. So a question to a hearer as to the impression made on his mind by ⟨the words was proper, to ₒobtain the opinion, understanding, or belief of the ·witness as to the person of whom the words were spoken.

APPEAL from the Delaware Circuit Court.

·DOWNEY, J.—This action was brought by McCall against Keesling for slanderous words spoken of him by Keesling. In order to present the questions which are to be decided, it is necessary to set out the complaint. It is alleged in the first paragraph "that the parties live in said county, the plaintiff living some half mile in a northerly direction from the defendant, across a field. He further avers that on or about the 28th day of September, in the year 1868, at said county, defendant had wheat threshed near his house, and that on the night of said day, at said county, two sacks of .his wheat had been, by some one, stolen from defendant; and afterward, to wit: on the next day, at his own house, the said defendant, in a certain conversation in the presence and hearing of certain good and worthy citizens of said county, of and concerning the said stolen wheat, and of and ⟨concerning the plaintiff, and of and concerning the plaintiff's character for honesty, in answer to a question ·put by one to whom defendant was talking, as to whether he, defendant, ⟨had any idea as to which way the stolen wheat went, defendant spoke, uttered, and published of and concerning plain-ⁱtiff and his, plaintiff's, character for honesty the false, scan-·dalous, malicious, and defamatory words, ·following, that is to say: first set: I (defendant meaning) think it went north. Tom McCall (plaintiff meaning) was here twice the day ·before to get seed wheat, and inquired whether it ·was clean

enough to sow without being cleaned again, and defendant then said: Now, I (defendant meaning) don't want anything to go out from me (defendant meaning) that I said that Tom McCall (plaintiff meaning) stole the wheat, for I (defendant meaning) don't know who stole it, but it looks suspicious. Then and there meaning to be understood by the persons who heard him thus speak, and making the impression upon the minds of said persons, that the plaintiff had been and was guilty of larceny. Second set: and again these words, I (defendant meaning) saw the man steal my wheat, and saw the way he went, he went across the field north, and it was nobody but Tom McCall (plaintiff meaning), thereby then and there charging plaintiff with the larceny of said wheat.

"And for another and second paragraph of complaint, plaintiff avers that before the speaking and publishing of the words as set out in this paragraph, plaintiff and defendant had a difficulty in regard to a business transaction, by reason whereof they were, at the time hereinafter spoken of, not good friends, and plaintiff, at the time that defendant was having his wheat threshed, went over to see defendant about the purchase of some wheat for seed. And plaintiff charges that on the evening of said day two sacks of wheat had been stolen of and from defendant, and defendant and certain persons standing near the straw stacks, in plain view of plaintiff's residence, which was nearest to where defendant and those persons stood, and just across the field, and not very far from where they, the defendant and the persons to whom he was talking, were standing, in a certain conversation to and with those persons, and in their presence and hearing, in speaking of the said stolen wheat, and of and concerning plaintiff and plaintiff's character for honesty, uttered, published, and spoke of and concerning plaintiff and plaintiff's character for honesty the false, scandalous, malicious, and defamatory words following, that is to say: the wheat (the stolen wheat meaning) did not go very far. I (defendant meaning) would not doubt that it (the stolen wheat still meaning) went across the field (nodding his head

toward plaintiff's); it looked very suspicious that it went that way, for me and him aren't very good friends.

"Second set. And again these words: Tom McCall (plaintiff meaning) is the man, and nobody else, that stole my wheat. I saw the man who took it, and can't be mistaken; thereby then and there meaning to be understood, and so understood by those who heard him thus speak as stated in this paragraph, that plaintiff had been and was guilty of larceny.

"And for another and further paragraph in this behalf, plaintiff says that he lives close to defendant and has resided there for a year and more, and that in that neighborhood he is known by all the community as "Walnuts," and again, as "the man who deals in walnuts;" and whenever any one is called "Walnuts," or spoken of as "the man who deals in walnuts," he, the plaintiff, is understood to be the man alluded to. And he further charges and avers that on or about the last day of September, 1868, at said county, the defendant threshed his wheat, and afterward, to wit, on the next day, gave out in speeches in the neighborhood that the night before he had two bags of wheat stolen, and afterward, to wit, on the day and year last aforesaid, at the county aforesaid, in a certain discourse which he, defendant, had and held with divers good and worthy persons of the county, of and concerning said wheat, which he, the said defendant, said had been stolen, and of and concerning said plaintiff and his, plaintiff's, character for honesty, he, the said defendant, uttered, published, and spoke of and concerning said wheat, and of and concerning said plaintiff and plaintiff's character for honesty, the false, scandalous, malicious, and defamatory words following, that is to say: first set: I (defendant meaning) know the man who took my wheat; I know all about it; I saw him take it; you all know him; it is the man they call "Walnuts" (plaintiff meaning).

"Second set. And again, these words: The man who trades in walnuts (plaintiff meaning) stole my wheat.

"Third set. And again, these words: The man who trades in walnuts (plaintiff meaning) took my wheat.

"Fourth set. And again, these words: Tom McCall (plaintiff meaning) stole my wheat.

"Fifth set. And again, these words, in substance: Thomas J. McCall (the plaintiff meaning) stole my wheat.   Then and there, by the speaking of the several sets of words in these different paragraphs mentioned, by the different persons who heard him so speak, then and there understood, and so intended to be understood by those who heard him, that plaintiff had been and was guilty of larceny, to the damage of plaintiff," etc.

The defendant demurred to each paragraph and each set of words in each paragraph of the complaint separately, and his demurrer was overruled, to which he excepted.   He then answered in three paragraphs ; the first of which was a general denial ; the second, a justification, alleging that the plaintiff did steal the wheat ; and the third, averring that all the words alleged were spoken by him in answer to inquiries by his neighbors as to whom he suspected of stealing the wheat alleged in the complaint, in good faith.

A demurrer was sustained to the third paragraph of the answer, and there was a reply, by way of traverse, to the second paragraph.

Of the issues thus formed there was a trial by jury, and a verdict for five hundred dollars for the plaintiff.   A motion was made by the defendant for a new trial, for the reasons that the court had erred in the admission of certain specified illegal evidence, in refusing certain instructions, and in giving certain other instructions ; that the damages were excessive, and the verdict of the jury contrary to law and the evidence. This motion was overruled, an exception taken, and final judgment rendered against the defendant for the amount found by the jury, from which judgment the defendant appeals.

The evidence given on the trial is not all in the bill of

exceptions, nor are any of the instructions given, or of those refused.

The only questions properly presented by the assignment of errors are, first, that the court erred in overruling the demurrers to each set of words, and to each paragraph of the complaint; and, second, in refusing to grant a new trial.

It is urged in the first place that the whole complaint is bad, because it is nowhere alleged that the words were maliciously spoken. It is contended that to say that the defendant spoke, uttered, and published the false, scandalous, malicious, and defamatory words following, etc., is not a sufficient charge of malice. We think differently. In the precedents in 2 Chit. Plead. 633 *et seq.*, this is the form used. And see form No. 17, 2 G. & H. 377.

It is contended that the first set of words in the first paragraph are insufficient because it is admitted that the defendant expressly told the hearers that he did not accuse, or intend to accuse the plaintiff of stealing his wheat, but that his conduct looked suspicious. What the defendant is alleged to have said on that subject is, " Now I don't want anything to go out from me, that I said that Tom McCall stole the wheat, for I don't know who stole it, but it looks suspicious." There can be no question that this conversation related to McCall. His name is mentioned. We think the words of this set, and also the second set, in the first paragraph, in connection with the averments of prefatory matter, are sufficient. In *Drummond* v. *Leslie*, 5 Blackf. 453, where the slanderer attempted to protect himself by protesting in a somewhat similar form, that he did not intend to say who committed the crime, it was held that while there was not a directly affirmative charge, if the words were calculated to induce the hearers to suspect that the plaintiff was guilty of the crime, they were actionable.

As to the first set of words in the second paragraph of the complaint, we think they are actionable, with the aid of the extrinsic facts alleged. The counsel of appellant argue this point as if the nodding of the head alleged was averred to

have been in the direction of the plaintiff's; but we think, taking the whole paragraph together, and considering that the plaintiff is not shown to have been present or even in view, that we should understand the allegation to be that the defendant nodded his head in the direction of plaintiff's residence, which it is alleged was near at hand, in sight, across the field. The second set of words in this paragraph is clearly sufficient.

With some hesitation we have come to the conclusion that the first, second, and third sets of words in the third paragraph of the complaint cannot be sustained. It is alleged in that paragraph, as will be seen by recurring to it, that in that neighborhood the plaintiff was known by all the community as "Walnuts," and as "the man who deals in walnuts." Now, if it had been alleged that the persons to whom the defendant spoke the slanderous words knew the plaintiff by these names, or that they lived in the neighborhood where he was thus generally known by that name, the hearers would have understood the reference. But the persons to whom the defendant addressed the words complained of are not alleged to have known him by these names, nor is it alleged that the hearers were of that neighborhood; but it is alleged only that they were "divers good and worthy persons of the county."

Had there been, in the conclusion of this paragraph, an unequivocal allegation that the persons to whom the words were spoken understood them to relate to the plaintiff, and to charge him with larceny, we could probably have held these sets of words good. *Harvey* v. *Coffin*, 5 Blackf. 566; *Harper* v. *Delp*, 3 Ind. 225.

The fourth set of words in this paragraph is sufficient.

It is objected to the fifth set, that they profess to set out only the "substance" of the words. If the case of *Butler* v. *Gutheny*, 1 Blackf. 496, is authority, then this set of words is sufficient, for that case decides that such a mode of pleading is allowable. It is urged, however, that that case is not good law, and that for this reason it is not found in

the first edition of the reports by Judge BLACKFORD. As this case will have to be reversed on other grounds, and as this part of the complaint may be amended in the circuit court, before another trial, we have concluded not to consider or decide this question.

It is contended that the court erred in allowing the plaintiff to testify on the trial that he and the defendant had a difficulty previous to the speaking of the words for which the action was brought. This evidence, we presume, was offered and admitted for the purpose of proving the truth of the allegation to that effect in the second paragraph of the complaint. For that purpose we see no objection to its admission. So far as it went it tended to show that the plaintiff was the person intended by those words of the defendant, which pointed the slanderous charge at some person with whom he was not " good friends."

The plaintiff, on the trial, asked one of the witnesses what impression was made upon his mind by the words spoken by the defendant, as to who stole the wheat, if any. To this question the defendant objected, because the witness had no right to state his impression as to the person meant from the speaking of said words, or any words, and because the question assumed the words testified to meant the charge of larceny. The objection was overruled, and the witness answered that his impression was, just at the time, that Tom McCall, plaintiff, had stolen the wheat. If it was intended by the objection to oppose the statement of a mere impression, because it was merely an impression, then we think the objection was well taken; for though a witness may state a fact to the best of his recollection or belief, or as he thinks the fact to be, *Stucker* v. *Davis*, 8 Blackf. 414, his mere impressions, not amounting to knowledge or belief, ought not to be received. But if it was intended by the objection to make the point that the witness could not testify as to his opinion, understanding, or belief as to the person to whom the conversation related, then we think it was admissible. *Smawley* v. *Stark*, 9 Ind. 386. This point is

Keesling *v.* McCall.

made with reference to the testimony of another witness who testified as to what understanding he had from the language and motions of the defendant, as to the person he meant. We think the evidence was properly admitted.

Counsel for the appellee contend that the judgment cannot be reversed for a defect in the complaint; that such defect must be regarded by us as having been cured or aided by the answer and verdict. We are aware that there are defects in pleading which may be thus cured, and the pleading aided by verdict. But we do not think that there is any rule by which the objection which we have found to exist to the complaint in this case can, under the circumstances of the case, be regarded as helped by the answer or verdict. If it appeared to us that the evidence was confined to the unobjectionable parts of the pleadings, and did not extend to the defective parts, so that we could see that the judgment was not based on the defective parts of the complaint, as intimated in *Tomlinson* v. *Hamilton*, 27 Ind. 139, we would then be justified in affirming the same, notwithstanding the defect in the pleadings. But such is not the case. The evidence is not all in the record, and we cannot therefore say that the plaintiff did not recover on the defective parts of the pleadings. The court having committed an error against the appellant, unless we can see that he was not prejudiced thereby, the judgment must be reversed. The defendant did all that was required of him to save the question, and when we, as a court of errors, review the action of the circuit court, we must decide the question as we think that court should have decided it.

The judgment is reversed, with costs.*

*W. March* and *W. Brotherton*, for appellant.

*T. J. Sample*, for appellee.

*Petition for a rehearing overruled.