Filed Jan. 24, 1889.

117 105
121 415
123 267

No. 13,389.

## PROSSER *v.* CALLIS ET AL.

LIBEL.— *What Constitutes.—Distinguished from Slander.*—It is not necessary that the words used in a published article should be slanderous, to maintain an action for libel. Any publication that tends to degrade, disgrace, or injure the character of a person, or bring him into contempt, hatred, or ridicule, is as much a libel as though it contained charges of infamy or crime. It is a libel to charge that a county officer published a false verified statement of the financial condition of the county.

SAME.—*Slanderous Words.—Evidence.—Person Referred to.—Opinion of Hearers.*—Where slanderous words are written or spoken of one, by indirection, and are read or heard by persons conversant with the facts, it is competent to prove by such persons, who, in their opinion, was referred to by the language used.

From the Morgan Circuit Court.

*L. Ferguson, C. G. Renner* and *G. A. Adams,* for appellant.

*J. V. Mitchell, W. R. Harrison* and *W. E. McCord,* for appellees.

COFFEY, J.—This was an action brought in the Morgan Circuit Court by the appellant against the appellees and one McCord. The amended complaint in the cause is substan-

tially as follows: That the plaintiff prior to and on the 22d day of August, 1885, was the auditor of Morgan county, Indiana; that as such auditor he made, signed and published a certain report of the finances of said county, which report for the year ending May 31st, 1885, he made, signed and published prior to said 22d day of August, 1885; that the defendant Lizzie O. Callis is, and, on the said 22d day of August, was, the owner and publisher of the "Weekly Gazette," a newspaper of general circulation in said county of Morgan, printed and published at the city of Martinsville, in said county and State; that the defendant Edwin W. Callis is, and, on said 22d day of August, 1885, was, the editor and business manager of said newspaper; that on said 22d day of August, 1885, the defendant Elam M. McCord did write, and the defendants did print, utter and publish in the columns of said Weekly Gazette, of and concerning the plaintiff, and referring to the report so made by the plaintiff, the following false, libellous and slanderous words and figures, to wit:

"At last, after many days of weary waiting and particular prodding, the county *dads* come out with a statement pretending to show the financial condition of Morgan county. Such a statement! It can not be understood by even a Philadelphia lawyer. One quite big item of expenditure, the cost of building the bridge at Mooresville, amounting to about $15,000, is entirely left out of the calculation. We suspect there may be other omissions of the same character, but have not time to search them out for this issue. Now, if such an important item as this is omitted while the statement is sworn to as correct, there is every reason to believe that the whole statement is a piece of financial botch-work, patched up to ease popular clamor. If an officer [plaintiff meaning] will swear to one lie, he will swear to another," thereby charging, and intending to charge, that the plaintiff was guilty of the crime of perjury and of falsehood, and of making a false report in the leaving out of said report said item of $15,000,

cost of said Mooresville bridge, when, in truth and in fact, the cost of said bridge at Mooresville was in said report as made, signed and published by this plaintiff; that the publication of said false, libellous and slanderous article is to plaintiff's damage $5,000. Wherefore, etc.

The defendants filed a demurrer to this complaint, alleging as cause that the same did not state facts sufficient to constitute a cause of action against them.

The cause was voluntarily dismissed by the plaintiff as to the defendant McCord.

The court then sustained the demurrer of the other defendants to the complaint. The plaintiff elected to stand by his complaint, and the defendants had judgment for costs.

The appellant assigns for error the sustaining of the demurrer of the appellees to his complaint.

It is not necessary that the words used in a published article should be slanderous to sustain an action for libel. Odgers on Libel and Slander, p. 20, says: "In cases of libel, any words will be presumed defamatory which expose the plaintiff to hatred, contempt, ridicule, or obloquy, which tend to injure him in his profession or trade, or cause him to be shunned or avoided by his neighbors. 'Everything, printed or written, which reflects on the character of another, and is published without lawful justification or excuse, is a libel, whatever the intention may have been.' The words need not necessarily impute disgraceful conduct to the plaintiff; it is sufficient if they render him contemptible or ridiculous. Any written words are defamatory which impute to the plaintiff that he has been guilty of any crime, fraud, dishonesty, immorality, vice, or dishonorable conduct, or has been accused or suspected of any such misconduct; or which suggest that the plaintiff is suffering from any infectious disorder; or which have a tendency to injure him in his office, profession, calling, or trade. And so too are all words which hold the plaintiff up to contempt, hatred, scorn, or ridicule, and which, by thus engendering an evil opinion of him in the minds of right-

thinking men, tend to deprive him of friendly intercourse and society."

Appended to this statement of the law by Mr. Odgers is a note, in which is found a list of cases where the use of certain language has been held to be libellous, among which are the following: "He is an infernal villain." *Bell* v. *Stone*, 1 B. & P. 331. "He is an impostor." *Cooke* v. *Hughes*, R. & M. 112. "He is a hypocrite." *Thorley* v. *Lord Kerry*, 4 Taunt. 355. "He is a frozen snake." *Hoare* v. *Silverlock*, 12 Q. B. 624. "He is a rogue and a rascal." *Villers* v. *Monsley*, 2 Wils. 403. "He is a dishonest man." *Austin* v. *Culpepper*, Skin. 123. "A mere man of straw." *Eaton* v. *Johns*, 1 Dowl. (N. S.) 602. "He is an itchy old toad." *Villers* v. *Monsley*, 2 Wils. 403. "He is a desperate adventurer, association with whom would inevitably cover gentlemen with ridicule and disrepute." *Wakley* v. *Healey*, 7 C. B. 591; 18 L. J. C. P. 241. "He grossly insulted two ladies." *Clement* v. *Chivis*, 9 B. & C. 172. "He is unfit to be trusted with money." *Cheese* v. *Scales*, 10 M. & W. 488.

Many more illustrations are given, but it is not necessary to pursue them further.

In Starkie on Slander and Libel, section 156, the learned author says: "According to another learned authority, everything written of another which holds him up to that scorn and ridicule which might reasonably (*i. e.*, according to our natural passions), be considered as provoking him to a breach of the peace is a libel. No man has a right, in any form of publication, to render the person or abilities of another ridiculous. * * * So also any publication made without justification or lawful excuse, which is calculated to injure the reputation of another, by exposing him to hatred, contempt, or ridicule, whatever the intention may have been. And so also as to any words in writing from which it may be inferred misconduct is imputed, or which tend to bring a person into contempt, or to set other persons against him as one who has misconducted himself."

In the case of *Johnson* v. *Stebbins*, 5 Ind. 364, this court says : " It is not necessary that the words should be slanderous, to sustain an action for libel. Any publication that tends to degrade, disgrace, or injure the character of a person, or bring him into contempt, hatred, or ridicule, is as much a libel as though it contained charges of infamy or crime." To the same effect are *Gabe* v. *McGinnis*, 68 Ind. 538 ; *De Armond* v. *Armstrong*, 37 Ind. 35 ; *Baine* v. *Myrick*, 88 Ind. 137 ; *Hake* v. *Brames*, 95 Ind. 161 ; *Crocker* v. *Hadley*, 102 Ind. 416.

It will thus be seen by an examination of these authorities, that there is a broad distinction between the ordinary action for slander and an action for libel.

In the case of *Hake* v. *Brames*, *supra*, it was held that it was libellous to write of the plaintiff that he was a liar. Also, that it was libellous to write in a letter that he, the writer, would not believe the plaintiff under oath.

' What is the charge under consideration ? Viewed in the light of the allegations in the complaint, the publication made by the defendants charges that the plaintiff had made and published a statement of the financial condition of Morgan county ; that the statement was false in that it omitted an item of $15,000 ; that it was suspected that it was false in other particulars; that there was every reason to believe that it was a piece of financial botchwork patched up to ease popular clamor ; that it was sworn to, and that an officer who would swear to one lie would swear to another.

It is hard to imagine what would tend more strongly to bring the appellant into disrepute with right-thinking men than to cause it to be believed that he had no regard for the truth, and that he had descended so low in the moral scale as to have no regard for his oath, and was ready at any time to swear a lie.

In our opinion the publication set out in the complaint, if false, is libellous, and that its publication gives the appellant a cause of action.

It is argued by the learned counsel for the appellees, that it appears on the face of the publication in controversy that the same does not refer to the appellant, but that it refers to the board of commissioners under the designation of " the county dads."

We are unable to say from the face of the paper who was intended to be included in the term " county dads." The appellant alleges in his complaint that the publication refers to him. Whether it refers to him or to some other person is a question of fact to be determined by the jury under the evidence, and is not a question of law to be determined by the court.

Did the publication refer to the board of commissioners in direct terms, then, under the well known rule that the courts must construe written instruments, the appellant could not be permitted to allege and prove that it referred to him. But this it does not do.

Where slanderous words are written or spoken of one, by indirection, and are read or heard by persons conversant with the facts, it is competent to prove by such persons, who, in their opinion, was referred to by the language used. 2 Greenl. Ev., section 417; Smawley v. Stark, 9 Ind. 386; Proctor v. Owens, 18 Ind. 21; Keesling v. McCall, 36 Ind. 321; De Armond v. Armstrong, supra; Montgomery v. Knox, 3 So. Rep. 211.

The complaint is substantially in the form prescribed by the statute.

In our opinion the court below erred in sustaining the demurrer of the appellees to the appellant's complaint, for which error the judgment should be reversed.

The judgment of the court below is reversed, at the costs of the appellees, with instruction to overrule the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

Filed Jan. 25, 1889.