BIG WHEEL RESTAURANTS, INC. *v.* JERRY BRONSTEIN.

[No. 1-673A106. Filed November 6, 1973. Rehearing denied December 14, 1973. Transfer denied April 19, 1974.]

424

*Alan Hurst, Hurst & Hurst,* of East Chicago, for appellant.
*David J. Colman,* of Bloomington, for appellee.

LOWDERMILK, J.—Jerry Bronstein, plaintiff-appellee (Bronstein) commenced his action against the Indiana Daily Student and Big Wheel Restaurants, Inc., defendant-appellant, (Big Wheel) for libelous remarks allegedly made by the Big Wheel manager at Bloomington, Indiana.

A motion to dismiss as to the Indiana Daily Student was timely filed and was sustained and Bronstein did not plead over as to said defendant.

The factual basis for this action arose when Bronstein, a student at Indiana University, initiated a promotional coupon book (Big Red Coupon Book, Issue 1). The coupon enterprise involved various merchants who would sponsor coupons which enabled the purchaser of the book to get discounts for various

purchases made at the businesses. The coupons sponsored by Big Wheel essentially offered a free sandwich and the coupons themselves made no reference to any necessity for a purchase.

Bronstein contacted the manager of Big Wheel in Bloomington, Jerry Fillner, and they arrived at a parol contract whereby Big Wheel agreed to sponsor six coupons per book. The sale price of the book was apparently never specifically agreed upon, but it was thought it would be $3.00 and there would be 3,000 books sold. The coupons were sold on a community wide basis with over 100 salesmen being involved. The enterprise was sponsored by Bronstein's fraternity and a University sanction was given, with the coupons being sold at various campus events, including registration.

The coupons sponsored by the businesses had various expiration dates and as these expiration dates occurred, Bronstein apparently would lower the price of the books. The price printed on the books was $3.00 but the books were sold for prices starting at less than $3.00 and gradually coming down as the coupons expired. By the end of the promotion the books were being sold for a nominal cost and the evidence shows that many books were given way. This discount resulted in a flood of coupons to many merchants, principally Big Wheel.

A new manager had taken over the Bloomington operation of Big Wheel and it was decided on a company level that the coupons would not be honored. This decision was viewed with disfavor by the holders of the coupons and the controversy developed.

At this point the Indiana Daily Student began an investigation of the controversy and one Debbie Davis, a reporter for the Indiana Daily Student, contacted the new manager of Big Wheel, Terry Hatchett. As a result of the interview two articles were published in the Indiana Daily Student on May

12, 1971, and May 13, 1971. The portion of the articles alleged to be libelous are as follows:

### Article of May 12, 1971

"The Big Wheel claims they were misrepresented in several ways, and had to stop honoring the coupons because of the amount of money involved in giving away sandwiches.

A spokesman for the Big Wheel said that Jerry Bronstein, the originator of the coupon books, had over-sold the original number of books contracted for, had failed to charge the full amount for the books and had misprinted the coupons. The restaurant manager claims they were to have read, 'One free sandwich with the purchase of the same.' "

### Article of May 13, 1971

"The Big Wheel also alleged that Jerry Bronstein, the originator of the coupon books, had failed to charge the full amount for the books, had oversold the number of books contracted for, and had misprinted the coupons. The restaurant manager said they should have read, 'One free sandwich with the purchase of the same.' "

Trial was had by the court without the intervention of a jury and the court entered its finding and judgment, to-wit:

". . . finds that the matters of statement attributed to agents of the defendants and printed in the Indiana Daily Student on May 12, 1971 and May 13, 1971, were libel per se as to the plaintiff, Jerry Bronstein; that the said statements were accompanied or made with actual malice on the part of the defendants agents; that the plaintiff suffered actual or special damages and is entitled to recover punitive damages against the defendant. It is now therefore, ORDERED, ADJUDGED AND DECREED that the plaintiff, Jerry Bronstein, recover . . . against the Big Wheel Restaurant, Inc. and Big Wheel Bloomington, Inc. and that the plaintiff recover of the defendants $5700 as actual damages and $1800 as punitive damages . . ."

A motion to correct errors was timely filed and overruled by the court.

The first issue raised by the motion to correct errors is whether Big Wheel is liable for the statements made by its manager, Terry Hatchett. The trial court found that the

statements were attributable to the agent of Big Wheel (Terry Hatchett.) Big Wheel argues that the manager had only limited authority and had no authority to make statements which would bind Big Wheel.

The manager of the Big Wheel in Bloomington was the only representative of Big Wheel in that community. He was responsible for the day to day operation of the restaurant and he testified that, in terms of the operation of the Big Wheel in Bloomington he was the general manager and there was no one else in Bloomington who directly represented the Big Wheel and he would be the agent for them.

Bronstein contends that the manager had the apparent authority to make the statements in question and that such statements are binding on Big Wheel. Mr. Hatchett testified that he never told Debbie Davis, a reporter for the Indiana Daily Student newspaper, that he did not have the authority to make the statements. This testimony was corroborated by Miss Davis. He further testified he never told her the company had told him not to comment and not to talk to reporters.

This court, in the case of *Farm Bureau Mut. Ins.* v. *Coffin* (1962), 136 Ind. App. 12, 186 N.E.2d 180, in passing on the authority of an agent to bind its principal, said, at page 18:

"When one has the appearance of a general agent, the law is clear that a third person dealing with him is not bound to inquire into his specific authority, nor is the principal protected by secret limitations upon the authority of such an agent. . . . *Since the principal put the agent in the position of trust, he is the one who should suffer the detriment. . . .*" (Our emphasis.)

One of the definitions of apparent authority stated in I. L. E. Vol. 1, Ch. 4, § 54, p. 336 is:

"The liability of the principal for conduct of the agent is not determined solely by the authority actually given him, but the principal will be bound as if he has conferred authority when the third party dealing with the agent is justified in believing it to have been given."

It is our opinion that the manager, by being the sole representative of Big Wheel in Bloomington, did have the apparent authority to make the statements in question to third parties (Debbie Davis), and any liability resulting therefrom would be that of the principal, Big Wheel, as well as that of the agent and manager, Terry Hatchett.

The next issue raised by the motion to correct errors is that the evidence is insufficient to support a finding of libel per se.

In his complaint Bronstein alleged that the libel injured his good name, integrity and reputation as a businessman and his future practice as such. 18 I. L. E., *Libel and Slander,* § 26, p. 466, discusses libel tending to injure business as follows:

> "If words falsely written or uttered directly tend *to the prejudice or injury of any person in his profession, trade, or business, they are actionable per se. . . ."* (Our emphasis.)

The evidence and the reasonable inferences to be drawn therefrom most favorable to the appellee, Bronstein, establish that the statements alleged to be libelous were false.

The term "defamatory per se," which would include "libel per se," has been defined in the concurring opinion of Judge Faulconer in the case of *Gibson* v. *Kincaid* (1966), 140 Ind. App. 186, 221 N.E.2d 834, as follows:

> "The term *"defamatory per se"* shall be taken to designate words whose defamatory imputation is apparent on their face; that is, words which are defamatory in and of themselves. . . ."

The trial court found that the statements were libel per se. The statements were obviously concerned with Bronstein's business. It is our opinion that the statements standing alone constitute libel per se, and the trial court's finding is supported by sufficient evidence.

The next issue raised in the motion to correct errors is that special damages ($5,700) awarded to Bronstein were not

supported by the evidence. Big Wheel contends that there is no direct evidence linking the articles in the newspapers with any damage to Bronstein. However, a careful search of the record reveals that there was evidence that Bronstein's business reputation was injured by the articles.

Joseph O'Connor, the manager of a Burger King restaurant, who had sponsored coupons in the first issue of the Big Red Coupon Book, was asked the following questions to which he gave the following answers:

"Q. Was it a fact that you made these newspaper articles a factor in your decision not to continue to do business with Mr. Bronstein?

A. It was a factor, yes."

\* \* \*

"Q. But nonetheless, the publicity that resulted caused you not to want to be in another—this was a fact?

A. Right. Just like one slice of the pie—it all fit in, and I said, 'No more; I'll never get in another one.'"

Dennis Lasser, a salesman for Bronstein, testified as follows:

"Q. Do you know—did Mr. Bronstein have a bad reputation on the I.U. campus other than, in your opinion, what was said in the Indiana Daily Student?

A. Not that I'm aware of, no."

Dan Pavelich, the manager of another restaurant who participated in the Big Red Coupon Book was asked the following question to which he gave the following answer:

"Q. Do you think the articles hurt his business?

\* \* \*

A. Well, it couldn't help him, you know what I mean, you go back and you say, 'Well, here I am', you know, and they say, 'Well, aren't you the same guy in this article?' . . ."

The above quoted evidence, along with other evidence, definitely establishes that the publication was read and considered by business people and was damaging to his business

reputation. A natural inference arises therefrom that the inability of Bronstein to sell his second and third issues of the coupon books was a result of the publications, knowledge obtained through it and the resulting damage to his reputation.

We note that the damages awarded by the trial court are less than the amount of damages sustained by Bronstein as lost profits on the second and third coupon books, shown by the record. It was, however, the trial court's prerogative to consider the evidence as to damages and weigh all factors, including loss from the sale of the coupon books and to consider and include the damage sustained to Bronstein's business reputation by the publications. 18 I. L. E., *Libel & Slander,* § 123, p. 524. Counsel for Big Wheel in oral argument contended that many factors were responsible for the lack of success of the second and third issues. However, there are no special findings of fact and we must assume that the trial court considered all of these factors in arriving at the amount of damages. We cannot say as a matter of law that the damages are unreasonable. *Dwyer* v. *McClean* (1962), 133 Ind. App. 454, 175 N.E.2d 50.

The next issue is on the matter of punitive damages. Big Wheel contends that punitive damages were not proper because of the lack of evidence showing that Big Wheel acted with malice in fact in giving the statements which appeared in the paper and that the evidence is conflicting on this matter. A review of the record discloses evidence which shows that Big Wheel made the statements with the intention of removing blame for the controversy in question from itself and placing said blame on the shoulders of Bronstein.

The trial court, in viewing this evidence, found that the statements were made with actual malice and it is our opinion that such a conclusion is quite reasonable from the evidence at trial. Having found actual malice the trial court was permitted to assess punitive damages.

In our opinion, the punitive damages in this case ($1,800), are not excessive. *Snider* v. *Lewis* (1971), 150 Ind. App. 30, 276 N.E.2d 160.

The remaining issue in this cause relates to Federal privilege, which Big Wheel contends should be applied in this case. Basically, this Federal privilege allows statements which might be libelous under State law to be protected by a Federal Constitutional privilege based on the First Amendment rights of freedom of speech and freedom of the press.

In its brief and in oral argument Big Wheel made a well reasoned legal argument on this issue. However, none of the many cases cited by Big Wheel relating to the Federal privilege extend that privilege to statements which are *libelous per se* and which were made with *actual malice*.

The trial court having found actual malice, the Federal privilege necessarily would not apply and this issue raises no question to this court.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 302 N.E.2d 876.