Rosita L. CUA, Appellant (Plaintiff
Below),

v.

Virginia G. RAMOS, Blas Davila,
Appellees (Defendants Below).

No. 2–679–A–189.

Court of Appeals of Indiana,
Second District.

March 26, 1981.

Rehearing Denied June 10, 1981.

**1164**

Donald A. Schabel, Indianapolis, Stephen H. Free, Christian, Waltz, White, Klotz & Free, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., John K. Silk, Deputy Atty. Gen., Indianapolis, for appellees.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Plaintiff-appellant Rosita L. Cua appeals a judgment in favor of defendants-appellees Virginia G. Ramos and Blas Davila, claiming: trial court error in entering judgment on the evidence as to an implied right of action (Count I); and, as to a libel action (Count II), error in admitting or excluding evidence, in giving or refusing instructions, and in ruling on numerous questions of procedure.

We reverse and remand for a new trial.

## FACTS

On February 15, 1976 Cua was appointed to the position of psychiatrist at Central State Hospital. At the time Ramos also was a psychiatrist at Central State Hospital and senior physician in the Bolton Building, where Cua was assigned. Davila was Chief of Services at the Bolton Building. Both Ramos and Davila were charged with the supervision of Cua and the evaluation of her performance.

Cua and Ramos eventually disagreed over the assignment of patients and Cua's work schedule. In December 1976, Ramos and Davila submitted a performance report to the Indiana State Personnel Division in which Cua was given a non-satisfactory rating. The substance of the report follows:

| CATEGORY | RATING |
| --- | --- |
| Planning—Sets realistic goals and objectives; anticipates and prepares for future requirements; establishes logical priorities: | NEEDS IMPROVEMENT |
| Leadership—Sets high-standards; provides good managerial example; delegates authority and responsibility effectively: | NOT SATISFACTORY |
| Subordinate Development—Helps subordinates in job development; gives guidance and counseling: | NOT SATISFACTORY |
| Human Relations—Establishes and maintains cordial work climate; promotes harmony; displays sincere interest in assisting employees: | NOT SATISFACTORY |
| Quantity of Work—Consider amount of work generated to amount of work expected for current job or position: | NOT SATISFACTORY |
| Quality of Work—Consider overall knowledge of duties and responsibilities and completeness and accuracy of work: | MEETS REQUIREMENTS |
| Use of Time—Consider attendance: is punctual reporting to work; accomplishes required work on or ahead of schedule: | NOT SATISFACTORY |
| Initiative—Consider amount of direction or supervision required and concern for consistency in trying to do better: | NOT SATISFACTORY |

The possible ratings were "SUPERIOR, HIGHLY SATISFACTORY, MEETS REQUIREMENTS, NEEDS IMPROVEMENT," and "NOT SATISFACTORY." Ratings which were less than "MEETS REQUIREMENTS" were explained:

1) *Quanity [sic] of Work*—Substandard for position. More concerned with who is doing less than she, rather than her own output.

3) *Use of time*—Poor. Spends much time in closed office and out of building. Often cannot be found when needed. Ward visits brief and not frequent enough.

4) *Initiative*—Requires frequent supervision and direction. Must be asked to do routine duties.

5) *Planning*—Generally waits till last minute to inform team of plans, especially absences.

6) *Leadership*—Rejects leadership role. Provides poor managerial example. Makes demands of others without willing to do own share.

7) *Subordinate Development*—Does nothing to enhance growth of her subordinates.

8) *Human Relations*—Very poor interpersonnal [sic] relationship with staff and peers. Has interest only in own personal concerns.

*Record* at 511.

On January 14, 1977, Ramos and Davila sent a memorandum to Superintendent Helmer recommending that Cua not be granted permanent status, as provided for in the State Personnel Act, and that her employment be terminated. On January 20, 1977, Superintendent Helmer sent a letter of notification to Cua stating that she would be dismissed on January 31, 1977, because of "unsatisfactory work performance."

Cua subsequently brought an action for compensatory and punitive damages, alleging that Ramos and Davila had submitted a false performance report to the State Personnel Division. The complaint contained two counts: Court I was for an implied right of action arising from the defendants' violation of a criminal statute;[1] Count II was for libel.

After Cua had presented her evidence and rested her case, Ramos and Davila moved for judgment on the evidence on both counts of the complaint. The trial court granted the motion as to Count I (violation of a criminal statute) but denied the motion as to the Count II (libel). Count II was tried to a jury, the jury finding for Ramos and Davila.

## ISSUES

Cua now appeals, alleging twenty-five separate points of error. We have consolidated the issues for appeal as follows:

1. Did the trial court commit reversible error in giving or refusing to give certain instructions?
2. Did the trial court abuse its discretion in denying Cua's motion to strike the defendants' answer as "sham and false"?
3. Did the trial court commit reversible error in admitting or excluding certain evidence?

Though we reverse for a new trial because of the trial court's failure to give the substance of Cua's tendered instruction No. 5 (Issue I B), we consider only other issues most likely to arise on retrial.

Other claimed errors we do not consider likely to arise on retrial are: (1) The admission of Exhibits L, M and N (effect of pre-trial order); (2) the admission of Mary Sigler's testimony; (3) the ruling on a motion for new trial on the basis of newly discovered evidence; and (4) the striking of testimony because of violation of a separation of witness order. *Burk v. State*, (1971) 257 Ind. 407, 257 N.E.2d 1.

## DECISION

*ISSUE ONE—Instructions—*

Did the trial court commit reversible error in giving or refusing to give certain instructions?

*CONCLUSION*—The court committed reversible error in refusing one of Cua's tendered instructions.

### A.

Cua first asserts that the court erred in giving the defendants' tendered instruction No. 1 and refusing to give Cua's requested instruction No. 4. Defendants' tendered instruction No. 1, which was given, is:

Libel is defined as a malicious publication, expressed either in writing or printing, of a false statement to blacken the reputation of one who is alive, and expose him or her to public hatred, contempt or

---

1. Ind.Code § 4–15–2–41 (1976) prohibits the making of a false performance report:

No person shall make any false statement, certificate, mark, rating or report with regard to any test, certification or appointment made under any provision of this act or in any manner commit or attempt to commit any fraud preventing the impartial execution of this act and the rules.

No person shall directly or indirectly, give, render, pay, offer, solicit or accept any money, service or other valuable consideration for or on account of any appointment, proposed appointment, promotion or proposed promotion to, or any advantage in, a position in the classified service.

No employee of the division, examiner, or other person shall defeat, deceive or obstruct any person in his right to examination, eligi-

bility, certification or appointment under this act.

Section 4–15–2–42 (amended 1978) provides criminal sanctions for a willful violation of section 4–15–2–41:

Any person who willfully violates any provision of this act or of the rules shall be guilty of a misdemeanor, and shall upon conviction be punished by a fine of not less than twenty-five dollars ($25.00) nor more than five hundred dollars ($500), or by imprisonment for a term not exceeding twelve (12) months, or by both fine and such imprisonment.

Any person who is convicted of a misdemeanor under this act shall for a period of five (5) years, be ineligible for appointment to or employment in a position in the classified service.

ridicule. In the absence of an injury to reputation, even though the statement caused the plaintiff humiliation, embarrassment, and mental suffering, your verdict must be for the defendants. By a publication which brings plaintiff into public hatred, contempt or ridicule is not meant one which causes plaintiff embarrassment or injures her feelings, but one which actually lowers her in the estimation of the public and injures her reputation.

*Record* at 1747. On the other hand, Cua offered the following instruction:

A libel has been defined as a malicious defamation expressed either by writing or printing, or by signs, pictures, effigies, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects, of one who is alive and thereby exposed him to public hatred, contempt, ridicule, or obloquy; or to cause him to be shunned or avoided, or to injure him in his office, business, or occupation.

*Id.* at 193. The fault with the defendants' instruction No. 1, according to Cua, is that it only speaks of injury to public reputation, failing to mention injury to Cua's reputation as a professional. She seems to be arguing that one may be libeled in her reputation as a professional without being injured in her public reputation. In effect, the instruction given is attacked, not as erroneous, but as incomplete.

 Libel, generally, is a defamatory statement in written form. The injury to public reputation can be either to one's reputation as a professional or to one's reputation as an individual: "[D]efamation is an invasion of the interest in reputation and good name." *W. Prosser, Handbook of the Law of Torts* § 111, at 737 (4th ed. 1971). Thus, the definition of defamation is sometimes stated in disjunctive terms:

A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.

Restatement of the Law of Torts, § 559, P. 140 (1938).

*Erdman v. White,* (1980) Ind.App., 411 N.E.2d 653, at 658. But this is not to say that a court errs in refusing to give a more specific definition of defamation rather than a general one. A person who is injured in his reputation as a professional is necessarily injured in his public reputation. *See Local 15 of Independent Workers v. International Brotherhood of Electrical Workers,* (N.D.Ind. 1967) 273 F.Supp. 313, 320:

A statement may be defamatory when it is such as would tend to hold the plaintiff up to hatred, contempt, or ridicule; when it causes him to be shunned or avoided or tends to injure him in his profession, trade, or calling. *Prosser v. Callis,* 117 Ind. 105, 19 N.E. 735 (1889); *Patchell v. Jaqua,* 6 Ind.App. 70, 33 N.E. 132 (1893). In general, it may be said that defamation is that which tends to injure "reputation" or to diminish the esteem, respect, goodwill, or confidence in the plaintiff or to excite derogatory feelings or opinions about the plaintiff. *Prosser, Torts* (2nd.) § 92.

 To obtain reversal Cua has the burden of proving prejudicial error. *State v. Hall,* (1980) Ind.App., 411 N.E.2d 366. Assuming that an instruction is a correct statement of the law, the court may refuse to give it if the jury might tend to be misled or confused. *State v. Peterson,* (1978) Ind., 381 N.E.2d 83. The instruction given was an accurate statement of the law. The court apparently determined that the more general instruction would be better understood by the jury. So we must conclude Cua has failed to demonstrate reversible error in giving of defendants' tendered instruction No. 1 or in refusing Cua's tendered instruction No. 4.

### B.

Cua, understandably, also quarrels with the refusal of the court to give her tendered instruction No. 5, which explained that the unsatisfactory performance rating was defamatory as a matter of law. The refused instruction No. 5 read:

The explanation given by the defendants for the non-satisfactory performance rating that they assigned to plaintiff is plain, unambiguous, and susceptible of but one interpretation. Therefore, whether the explanation was defamatory or not is a question of law, and it is the duty of the court to instruct the jury as to whether or not the explanation can constitute a libel. Since the tenor of the language is to charge plaintiff with being a wholly unfit, incompetent and undesirable state employee, the imputation was such as to injure plaintiff in her employment at Central State Hospital and in her profession as a physician and psychiatrist. Accordingly, I instruct you that the explanation that defendants attached to the performance report on plaintiff can constitute a libel as that term is defined in these instructions.

*Record* at 194.

■ It has been said that, if words are "capable of two meanings, one libelous and one not, the case should properly go to the jury. *See Estill v. Hurst Publishing Co.,* at 1020; *Gearhart v. WSAZ, Inc.,* (E.D.Ky. 1958) 150 F.Supp. 98." *Cochran v. Indianapolis Newspapers, Inc.,* (1978) Ind.App., 372 N.E.2d 1211, 1217. *See Waugh v. Waugh,* (1874) 47 Ind. 580. A corollary to this rule is that the trial court errs in sending to the jury the question whether words are defamatory if they are unambiguously so. *Mosier v. Stoll,* (1889) 119 Ind. 244, 20 N.E. 752; *Young v. Clegg,* (1884) 93 Ind. 371; *Cochran v. Indianapolis Newspapers, Inc., supra; Henderson v. Evansville Press, Inc.,* (1957) 127 Ind.App. 592, 142 N.E.2d 920.

"In determining whether a defamatory meaning is possible the test is the effect which the article is fairly calculated to produce and impression it would naturally engender in the mind of the average person. *MacRae v. Afro-American Co.,* (E.D.Pa. 1959) 172 F.Supp. 184." *Cochran v. Indianapolis Newspapers, Inc., supra,* at 1217.

■ Thus, if the performance report is fairly calculated to produce and would naturally engender in the mind of the average person an imputation which would tend to prejudice or injure Cua in her profession, it is defamatory.[2] *See Big Wheel Restaurants, Inc. v. Bronstein,* (1973) 158 Ind.App. 422, 302 N.E.2d 876, at 879. *See also Biggins v. Hanson,* (1967) 252 Cal.App.2d 16, 59 Cal.Rptr. 897 (interoffice memo describing employee's insubordination and disloyalty defamatory); *Ashe v. Hatfield,* (1973) 13 Ill.App.3d 214, 300 N.E.2d 545 (interoffice memo criticizing writing ability of news writer could be defamatory); *Benson v. Hall,* (1976) Miss., 339 So.2d 570 (letter from department head to university officials describing secretary's work performance defamatory).

■ The performance report listed eight categories of evaluation to be completed by the supervisor. The only category rated as "MEETS REQUIREMENTS" was "Quality of Work"—the *ability* to perform well. Seven other categories which rated Cua's *actual* performance were lower than "MEETS REQUIREMENTS."

■ The report was fairly calculated to produce and would naturally engender in the mind of the average person the impression that, although Cua knew *how* to do her job, she would not *do* her job—she was incompetent as a psychiatrist at Central State Hospital. The unmistakable import of the report would clearly injure Cua's reputation, specifically her reputation as a psychiatrist; the report was unambiguously defamatory. Inasmuch as the statement was defamatory as a matter of law, the judge erred in instructing the jury that they could determine whether the statement was defamatory.

■ We do not reverse, however, unless prejudicial error has been demonstrated. *Lewis v. Davis,* (1980) Ind.App., 410 N.E.2d 1363; *Pardue v. Seven-Up Bottling Co.,* (1980) Ind.App., 407 N.E.2d 1154. In *Mosi-*

---

**2.** The defense of qualified privilege and an allegation of malice which would overcome the privilege were in issue at trial.

*er v. Stoll, supra,* and *Young v. Clegg, supra,* reversal was avoided because of the particular facts of the cases: in *Mosier* the statement was ambiguous, and in *Young* the instruction was correctly given. However, in *Henderson v. Evansville Press, Inc., supra,* the judgment was reversed, in part, because a demurrer had been sustained to a complaint containing words which were unambiguously defamatory.

In this case, the jury found for the defendants based upon instructions which permitted it to find that the report was not defamatory. Of course, it could be that the jury found that the statement was defamatory but that no malice was shown which would rebut the qualified privilege, or that the report was not defamatory but there was malice. We do not know and it is not our province to inquire. Thus we cannot make use of the appellate principle which permits us to affirm when the jury has unquestionably reached the right result, notwithstanding improper instructions. *See Lewis v. Davis, supra; Pardue v. Seven-Up Bottling Co., supra; Vernon Fire & Casualty Insurance Co. v. Sharp,* (1974) 161 Ind.App. 413, 316 N.E.2d 381.

██ Under these circumstances the jury could have been misled to the substantial detriment of the plaintiff Cua. Therefore, the trial court committed prejudicial error in refusing Cua's tendered instruction No. 5, which would have instructed the jury to find that the performance report was defamatory.[3]

Cua has assigned various other errors which for one reason or another are waived: refusing tendered instruction No. 8 and giving of instruction No. 5, but Cua agreed to the giving of the proposed instructions, *Record* at 1711–12; giving of instruction No. 2

but cites no authority, A.R. 8.3(A)(7); giving of tendered instructions No. 6 (as modified), 7, and 8 but fails to set them out in her brief or state objections made, A.R. 8.3(A)(7); the trial court's ruling on the motion for judgment on the evidence by treating it as a .T.R. 12(B)(6) motion, but nothing in the record so indicates, A.R. 7.2(B); *Dager v. Indiana Suburban Sewers, Inc.,* (1970) 254 Ind. 137, 261 N.E.2d 858; *Hughes v. Hughes,* (1976) Ind.App., 356 N.E.2d 225; and any attack on the ruling on the motion for judgment on the evidence as to Count I fails because there is no citation to the record of any special damages, an essential element of Count I, A.R. 8.3(A)(7); failing to give the parties an opportunity to object to instructions out of presence of the jury but no objection appears in the record, *Whisler v. Whisler,* (1904) 162 Ind. 136, 67 N.E.2d 984; *McWhirt v. Fearnow,* (1973) 158 Ind.App. 68, 301 N.E.2d 810; erring in allowing the defendants to amend their answer on the day of trial, but no objection was made and Cua refused an offer of a continuance, *Huff v. Travelers Indemnity Co.,* (1977) 266 Ind. 414, 363 N.E.2d 985; *Weenig v. Wood,* (1976) 169 Ind.App. 413, 349 N.E.2d 235; excluding a portion of Cua's testimony, but no authority cited as to why it was relevant, A.R. 8.3(A)(7); admitting testimony of Mathen, Klink and Sanchez and excluding exhibits D, E, F, S and T, but no specific objection was made, *Schoby v. Smith,* (1968) 142 Ind.App. 483, 235 N.E.2d 495; *Beatty v. Donaldson,* (1964) 136 Ind. App. 269, 200 N.E.2d 233; admitting exhibits E and F even though not on the exhibit list, but no authority cited, A.R. 8.3(A)(7).

*ISSUE TWO—Motion to Strike—*

Did the trial court abuse its discretion in denying Cua's motion to strike the defendants' answer as "sham and false"?

---

**3.** On remand, Cua's tendered instruction No. 5 could be modified because it overstates the extent of defamation by instructing that the report characterized Cua as "wholly" unfit. This misstatement does not change the result here because the instruction was intended to order the jury to find that the statement was defamatory; the precise extent of defamation was irrelevant. We thus avoided the rigor of the rule which requires affirmance when the

refused instruction contains "minor technical" errors or is incorrect "precisely as presented." *See Van Sickle v. Kokomo Water Works, Co.,* (1959) 239 Ind. 612, 158 N.E.2d 460; *State Highway Commission v. Jones,* (1977) 173 Ind. App. 243, 363 N.E.2d 1018; *Northern Indiana Public Service Co. v. Otis,* (1969) 145 Ind.App. 159, 250 N.E.2d 378. In all of these cases the instruction misstated the law; it was not a mere irrelevant characterization of the facts.

*CONCLUSION*—The trial court did not abuse its discretion in denying the motion to strike.

■ The defendants answered the complaint by a general denial. *See* T.R. 8. Cua claims that the general denial was submitted by way of answer after both defendants had been deposed and admitted the substantial truth of the first five paragraphs of the complaint; therefore, it was an abuse of discretion to deny her motion to strike because the defendants in good faith could not deny those paragraphs of the complaint. Instead, the trial court should have stricken the answer as "sham and false" pursuant to T.R. 11(A).

■ A trial judge has broad discretion in refusing to grant a motion to strike. *Apple v. Apple,* (1973) 158 Ind.App. 7, 301 N.E.2d 534. His decision will not be reversed unless prejudicial error is clearly shown. *Smith v. Midwest Insurance Co.,* (1972) 154 Ind.App. 259, 289 N.E.2d 788.

■ In determining whether the answer should be stricken as sham and false, the judge had to consider that the defendants could be defaulted if the answer were stricken. Default judgments are not favored. *Erdman v. White, supra; Beatty v. McClellan,* (1949) 119 Ind.App. 385, 88 N.E.2d 56. Further, Cua admits that the first five paragraphs of the complaint were only substantially correct. The defendants by stipulation at the pretrial conference admitted two of the paragraphs but qualified their admission of three others, and the only inconvenience which Cua asserts in the failure of the court to strike the answer is that she was compelled to try the case on its merits. The trial court's decision not to invoke the severe penalty of striking the answer under these circumstances was not an abuse of discretion.

*ISSUE THREE—Evidence—*

Did the trial court commit reversible error in admitting or excluding certain evidence?

*CONCLUSION*—The trial court did not commit reversible error.

A.

■ Exhibit H, memoranda which summarized the log of time Cua spent in the ward, was admitted in evidence rather than the log book itself. Cua sees a violation of the best evidence rule. We do not.

The original of a document is not always the only evidence admissible to prove its contents. Indiana has long

recognized that unavailability of a lost writing will permit introduction of other evidence to prove the writing's content if the proponent satisfactorily demonstrates to the trial court that the original writing is lost. If he can show by a preponderance of the evidence that a diligent but unsuccessful search for the writing has been made in the place or places where it is most likely to be found, secondary evidence of the writing is admissible to prove content of the writing. *Howe v. Fleming,* (1889) 123 Ind. 262, 24 N.E. 238; *The Johnston Harvester Co. v. Bartley,* (1883) 94 Ind. 131.

*American United Life Insurance Company v. Peffley,* (1973) 158 Ind.App. 29, 301 N.E.2d 651, 657.

Here, the court apparently determined that the defendants had adequately demonstrated the original to be unavailable. The record shows that the court was informed that the original was not available, that pages were missing. *Record* at 1307. This was evidence from which the court could determine that the log was unavailable. There was no abuse of discretion in admitting the memoranda.

B.

■ The next error alleged is that the trial court improperly permitted Davila to read from a memorandum which was an admonishment of Cua. Cua contends that the document could have been used at best to refresh Davila's memory, but permitting her to read from it was to admit hearsay.

■ Assuming that the document was hearsay, the admission of it would not be

reversible error. The substance of the memorandum was that Cua had refused to treat some patients. Testimony by Davila and others was to the same effect—that Cua had refused to see patients, even though the particular circumstances may have differed somewhat. This testimony was a small part of a larger plan to show that Cua did not spend enough time with the patients, that she did a poor job. The evidence was in substance, if not in form, cumulative. The erroneous admission of primarily cumulative evidence does not warrant reversal. *Shanks v. AFV Industries, supra*; *Loudermilk v. Feld Truck Leasing Company, supra*. The case cited by Cua, *Bradley v. Phelps*, (1970) 147 Ind.App. 349, 260 N.E.2d 894, is of no help to her. The court there refused to reverse because the evidence was cumulative. *Id.* at 355, 260 N.E.2d at 898.

The trial court committed prejudicial error in refusing to give the substance of Cua's tendered instruction No. 5. Accordingly, we reverse and remand for a new trial not inconsistent with this opinion.

RATLIFF, J. (sitting by designation), concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

I would affirm the judgment of the trial court.

Dr. Cua does not argue that any instruction given to the jury advised that whether the report statements were defamatory was a question of fact rather than one of law. If such had been the case, it would have been incumbent upon Cua to object to that instruction or instructions and to preserve the alleged error by argument in her brief.

Dr. Cua argues solely that the trial court erred in refusing her tendered instruction # 5. As the majority points out in its footnote 3, that instruction is overbroad and therefore so defective as to require modification upon retrial.

It is not error to refuse a defective instruction. Our Supreme Court has even held that it is not error to refuse an instruc-

tion which is correct except for a minor technicality. In *Van Sickle v. Kokomo Water Works Co.* (1959) 239 Ind. 612, 158 N.E.2d 460, the Court observed that the question upon appellate review is whether the Court had the duty to give the instruction "*precisely* as presented" (emphasis supplied) 239 Ind. at 618. This Court has reflected that rigid position. *State Highway Commission v. Jones* (1st Dist. 1977) 173 Ind.App. 243, 363 N.E.2d 1018; *Northern Indiana Public Service Co. v. Otis* (1969) 145 Ind.App. 159, 250 N.E.2d 378.

My dissent in this regard is not intended to detract from what I consider the affirmative duty of the judge to fully and fairly instruct the jury. Nevertheless I am unable to vote to reverse a judgment for failure to give a particular tendered instruction which is admittedly defective, though minimally so.