Rosita L. CUA, Appellant,

v.

Virginia G. RAMOS, Blas Davila,
Appellees.

No. 482S128.

Supreme Court of Indiana.

April 1, 1982.

Donald A. Schabel, Indianapolis, Stephen H. Free, Christian, Waltz, White, Klotz & Free, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Robert S. Spear, Robert F. Hassett, Deputy Attys. Gen., Indianapolis, for appellees.

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Second District Court of Appeals. Plaintiff-appellant, Rosita L. Cua, brought an action against Defendants-Appellees, Virginia G. Ramos and Blas Davila, for compensatory and punitive damages on account of an allegedly false perform-

ance report that Defendants submitted to the State Personnel Division, in which they assigned Cua an unsatisfactory rating. A Hamilton Circuit Court jury found in favor of Ramos and Davila. The Court of Appeals, Second District, reversed the decision of the trial court. *Cua v. Ramos,* (1981) Ind.App., 418 N.E.2d 1163.

The question presented for review is whether the Court of Appeals erred in holding that the trial court, in refusing to give Cua's instruction No. 5, committed prejudicial error. We find the Court of Appeals to be in error on this issue and accordingly vacate its opinion. In addition, we will also decide other issues that were presented below.

On February 15, 1976, Cua was appointed to the position of psychiatrist at Central State Hospital. At the time, Ramos also was a psychiatrist at Central State Hospital and Senior Physician in the Bolton Build-

ing, where Cua was assigned. Davila was chief of services at the Bolton Building. Both Ramos and Davila were charged with the supervision of Cua and evaluation of her performance. In December, 1976, Ramos and Davila submitted a performance report to the Indiana State Personnel Division pursuant to a statutory duty imposed upon them as the appointing authority under Ind.Code § 4–15–2–21 (Burns 1982 Repl.) which reads in relevant part:

"... At such times during the working test period and in such manner as the director may require, the appointing authority shall report to the director his observation of the employee's work, and his judgment as to the employee's willingness and ability to perform his duties satisfactorily, and as to his habits and dependability ...."

[Acts 1941, ch. 139, § 22, p. 387.]

The report read as follows:

| CATEGORY | RATING |
|---|---|
| Planning—Sets realistic goals and objectives; anticipates and prepares for future requirements; establishes logical priorities: | NEEDS IMPROVEMENT |
| Leadership—Sets high standards; provides a good managerial example; delegates authority and responsibility effectively: | NOT SATISFACTORY |
| Subordinate Development—Helps subordinates in job development; gives guidance and counseling: | NOT SATISFACTORY |
| Human Relations—Establishes and maintains cordial work climate; promotes harmony; displays sincere interest in assisting employees: | NOT SATISFACTORY |
| Quantity of Work—Consider amount of work generated to amount of work expected for current job or position: | NOT SATISFACTORY |
| Quality of Work—Consider overall knowledge of duties and responsibilities and completeness and accuracy of work: | MEETS REQUIREMENTS |
| Use of Time—Consider attendance; is punctual reporting to work; accomplishes required work on or ahead of schedule: | NOT SATISFACTORY |
| Initiative—Consider amount of direction or supervision required and concern for consistency in trying to do better: | NOT SATISFACTORY |

The possible ratings were "SUPERIOR, HIGHLY SATISFACTORY, MEETS REQUIREMENTS, NEEDS IMPROVEMENT," and "NOT SATISFACTORY."

Ratings which were less than "MEETS RE-QUIREMENTS" were explained:

1) *Quanity [sic] of Work*—Substandard for position. More concerned with who is doing less than she, rather than her own output.

3) *Use of time*—Poor. Spends much time in closed office and out of building. Often cannot be found when needed. Ward visits brief and not frequent enough.

4) *Initiative*—Requires frequent supervision and direction. Must be asked to do routine duties.

5) *Planning*—Generally waits till last minute to inform team of plans, especially absences.

6) *Leadership*—Rejects leadership role. Provides poor managerial example. Makes demands of others without willing to do own share.

7) *Subordinate Development*—Does nothing to enhance growth of her subordinates.

8) *Human Relations*—Very poor interpersonnal [sic] relationship with staff and peers. Has interest only in own personal concerns.

*Record* at 511.

The Superintendent at Central State Hospital, Eric Helmer, testified that it was standard operating procedure to delegate Cua's rating to her supervisors and that it was standard operating procedure for the explanations to be included in substandard ratings as was done in this report. On January 14, 1977, Ramos and Davila sent a memorandum to Superintendent Helmer recommending that Cua not be granted permanent status as provided for in the State Personnel Act, and that her employment be terminated. On January 20, 1977, Superintendent Helmer sent a letter of notification to Cua stating that she would be dismissed on January 31, 1977, because of unsatisfactory work performance.

## I.

One of the specifications of error assigned by Cua was the refusal of the trial court to give to the jury Cua's tendered instruction No. 5. The Court of Appeals found that the refusal of instruction No. 5 was prejudicial error requiring the granting of a new trial to plaintiff. Cua's tendered instruction No. 5 provided as follows:

"The explanation given by the defendants for the non-satisfactory performance rating that they assigned to plaintiff is plain, unambiguous, and susceptible of but one interpretation. Therefore, whether the explanation was defamatory or not is a question of law, and it is the duty of the court to instruct the jury as to whether or not the explanation can constitute a libel. Since the tenor of the language is to charge plaintiff with being a wholly unfit, incompetent and undesirable state employee, the imputation was such as to injure plaintiff in her employment at Central State Hospital and in her profession as a physician and psychiatrist. Accordingly, I instruct you that the explanation that defendants attached to the performance report on plaintiff can constitute a libel as that term is defined in these instructions."

The Court of Appeals held that the tendered instruction would have informed the jury that the report filed by defendants constituted libel *per se* as a matter of law and the jury did not have the right to determine whether or not it was libel. The Court of Appeals did, however, indicate in their opinion that the instruction would need to be modified on retrial since it was overbroad in its statement as to the extent of defamation. We note the instruction states that the tenor of the language is to charge plaintiff with being wholly unfit, incompetent, and undesirable as a State employee. These are qualifications that are themselves subject to determination of the trier of fact and should not be imposed on the jury as acceptable characterizations as a matter of law. Judge Sullivan pointed out in his dissent that our holding in *Van Sickle v. Kokomo Water Works Company*, (1959) 239 Ind. 612, 158 N.E.2d 460, provided that, "the question upon appellate review is whether the court had the duty to give the

instruction *precisely* as presented." *Cua, supra,* at 418 N.E.2d at 1171. A trial court does not have a duty to modify a defective instruction. *Ricketts v. Harvey,* (1886) 106 Ind. 564, 6 N.E. 325:

> "It is settled law that a court is not bound to remodel an instruction, by remedying its defects or removing its infirmities; unless the party is entitled to have it given in terms as prayed, the court may properly refuse it. *Goodwin v. State,* 96 Ind. 550, and authorities cited, p. 566."

This rule has been followed by this Court in *Van Sickle, supra,* and by the Court of Appeals in *State Highway Comm., v. Jones,* (1977) 173 Ind.App. 243, 363 N.E.2d 1018; *Northern Indiana Public Service Co., v. Otis,* (1969) 145 Ind.App. 159, 250 N.E.2d 378.

The court did instruct the jury that libel is defined as a malicious publication expressed either in writing or printing, of a false statement to blacken the reputation of one who is alive and expose him or her to public hatred, contempt or ridicule. The jury was also instructed that truth was a defense to libel in that the defendants must prove by a preponderance of the evidence that the written reasons in the report were true. The evidence showed that these reports were considered confidential and were not exposed to the general public. Furthermore the language implied in them is not inflammatory or expressed in terms that would connote maliciousness unless, of course, they were totally unfounded and untrue. There was a great deal of evidence, from staff members in the hospital and from patients, that supported the report made against Cua, although there was conflicting testimony which tended to refute the statements made concerning Cua's performance in the various categories. Testimony from other doctors, nurses, social workers, and other staff personnel indicated that Cua would fail to have the required regular sessions with her patients and that she would refuse to talk to them and order them to "go away" when they came to see her. Nurse Kennedy testified that on occasion she would knock on Dr. Cua's door and

after having received no response, open the door to find Cua inside with a book or magazine on her desk. Doug Davis, a social worker, had the same trouble finding Dr. Cua when she was needed in the ward and at one time found her in her office clipping coupons from a newspaper.

Other testimony revealed that while other physicians made routine visits to their patients, Cua failed to do the same. The doctors acted as team leaders in the treatment programs. The purpose of the team was to design a plan for treating each individual patient. Cua was the team leader of the blue unit and testimony showed she wholly failed in her leadership at this post. She took little part in discussions at her team meetings and many times would leave without explanation before the meeting was over. Several witnesses testified that Cua was not an active participant in developing the treatment plan, that she hardly knew the patients and had very little input into the program. John McKibbin, a social worker, testified that she just didn't want to do a lot of work and tried to push it off on other staff members. She often missed pre-scheduled staffings and took very little part in them when she did appear. It does not appear that the trial court committed reversible error in refusing Cua's tendered instruction No. 5. Even if it could be said that the instruction was partially correct, it appears that the jury was amply instructed under the circumstances and that the proper result was reached considering the great weight of the evidence in the cause. The court did not commit reversible error by refusing this instruction.

Another question concerning a tendered instruction that was not raised in the petition to transfer needs to be discussed here. We agree with the Court of Appeals' finding that the trial court did not commit reversible error in giving defendants' jury instruction regarding the definition of libel and refusing to give plaintiff's instruction. *Cua v. Ramos,* 418 N.E.2d at 1166.

## II.

Cua claims the court erred in striking the testimony of Gertrude Hughley af-

ter she indicated on cross-examination that she had discussed her testimony with other witnesses in the case. The standard of review in cases where an order for the separation of witnesses has been violated was set forth by this Court in *Buchanan v. State*, (1975) 263 Ind. 360, 332 N.E.2d 213:

"Once a separation of witnesses has been ordered, what to do about a violation of the order lies within the discretion of the trial court. The court's ruling will not be disturbed unless there is a clear abuse of that discretion."

It is true we also held in *Brannum v. State*, (1977) 267 Ind. 51, 56, 366 N.E.2d 1180, 1184, that:

"It has also been held to be prejudicial error to refuse to permit such a witness to testify where the party calling the witness is not at fault for such violation. *McCoy v. State*, (1960) 241 Ind. 104, 170 N.E.2d 43; *Taylor v. State*, (1891) 130 Ind. 66, 29 N.E. 415; *State ex rel. Steigerwald v. Thomas*, (1887) 111 Ind. 515, 13 N.E. 35."

Thus, it is clear that a party is not at fault for the violation of a separation order where it was not known at the time that the violator would subsequently be called as a witness. This rule has been applied where the witness in question was called as a rebuttal witness. Here, however, Gertrude Hughley appeared on the plaintiff's witness list and she was known to be a witness in the cause and knew that she was to be called as a witness. The determination by the court then to strike her testimony when it was revealed that she had discussed her testimony with other witnesses was within the discretion of the court and it cannot be said that he abused that discretion by ordering her testimony stricken.

### III.

Cua next contends that the court erred in allowing the testimony of Mary Sigler and the introduction into evidence of defendant's exhibits L, M, and N, which were sponsored by Mary Sigler.

In overruling appellant's objection to the testimony of Mary Sigler, the court noted that at a pretrial hearing, defendant's supplemental witness list included four additional named witnesses and a catchall phrase which indicated "all witnesses appearing on plaintiff's witness list." At such pretrial hearing the appellant stated she would have no objection to the four additional supplemental witnesses but made no objection on the record as to the catchall of witnesses appearing on the plaintiff's list. The court stated that since no objection was made at that time and since this witness' name did appear on the plaintiff's witness list, that he felt the objection to the witness was therefore waived. Defendants properly rely on *Guardiola v. State*, (1978) 268 Ind. 404, 375 N.E.2d 1105, for urging our approval of the court's actions. We note further that plaintiff's brief does not set out the substance of Mary Sigler's testimony that was prejudicial to her cause if, *arguendo*, it was erroneous, and any authority to indicate in what way it was, in fact, erroneous. The substance of exhibits L, M, and N, are not set out nor is there any authority cited in support of Cua's position that they were improperly admitted as required by A.P. 8.3(A)(7); *Guardiola, supra*. There is no showing here that the court either abused its discretion or committed reversible error in its rulings involving this witness and these exhibits.

### IV.

Finally, Cua contends she was entitled to a new trial on the grounds of newly discovered evidence. She alleges that with reasonable diligence she could not have discovered and produced such evidence at trial and that such evidence would probably result in a different outcome.

When newly discovered evidence is raised as an issue in a motion to correct errors, the moving party must establish that the evidence is material and relevant, that it is not cumulative, and that it will probably produce a different result. *Tessely v. State*, (1978) 267 Ind. 445, 453, 370 N.E.2d 907, 912. Whether or not to grant a new trial on the basis of newly discovered

evidence is a matter resting in the sound discretion of the trial court and its decision will not be overturned on appeal except for an abuse of that discretion. *Fortson v. State* (1979) Ind., 385 N.E.2d 429; *Emerson v. State*, (1972) 259 Ind. 399, 287 N.E.2d 867. Cua attached to her affidavit in support of the motion to correct errors a number of exhibits consisting of the written statements of individuals she would call as witnesses at a new trial. None of the statements are under oath and one statement is not signed by the party allegedly making the statement. Two of the statements were alleged to be those of Martha J. Stafford, a social worker at Central State Hospital, who worked with plaintiff in the blue unit. Her statements are generally supportive of Cua as to her personal ability and integrity and also as to her professional abilities. She indicated that plaintiff did her professional work in a responsible manner and was pleasant and agreeable to her patients and co-workers. This testimony is cumulative in nature because it duplicates the testimony of a number of other witnesses at trial. Stafford also discussed other witnesses that had testified against plaintiff, namely John McKibben and Delouise Bryant, as well as defendant Virginia Ramos, and generally denigrated their performance and their duties and professional abilities. A statement, alleged to be that of Janice Stephenson, was submitted, although it was not signed by Janice Stephenson, and generally criticized Virginia Ramos regarding her responsiveness to the needs of her patients and her professional capabilities. Stephenson stated however that Cua was very responsive to her patients and courteous to staff and patients in performing her duties. Dr. Craig A. Moorman stated generally that Cua was cooperative and helpful and had good rapport with her patients. He further seemed to feel that she did a good job and seemed to indicate, although he did not state directly, that Dr. Ramos did not. The most lengthy statement was that of Hazel I. Best, an employee at Central State Hospital, which indicated that prior to the trial of this cause, defendants' witnesses gathered to plan their testimony and that they were pressured to testify in favor of defendants at the risk of losing their jobs or promotions. She also claimed that some of the witnesses rode to the trial in a State owned automobile at State expense. Her statement also speaks highly of plaintiff Cua as an individual, in her family life, and in her professional duties at the hospital. On the other hand, she speaks disparagingly of the same areas of the lives of the defendants. The facts set out in all of these statements indicate that, at least to a large extent, the information in them is based upon opinion and hearsay. Most of it is cumulative of the issues that were before the trier of fact in the trial and were as available then as they are now. Furthermore, as defendants point out, these unsworn statements are aimed at calling into question the credibility of the defendants' witnesses at trial. The defendants' witnesses were subjected to full examination at trial and the jury had the opportunity to judge their credibility in the process. It was, of course, apparent that there were strained relations between the plaintiff and the defendants, and further, that there were staff people who placed themselves on one side or other of the controversy through their testimony. The motives that might affect the credibility of these witnesses in giving their testimony as it affected their relationships and job security were certainly apparent in the very nature of the whole scenario. In examining the content of the total testimony by the large number of witnesses in this cause, it does not appear that the addition of the testimony of these witnesses, if in fact they should testify as the statements indicate they would, would reasonably be expected to produce a different result.

## V.

We agree with the Court of Appeals in its disposition of several other issues raised on appeal and adopt its findings and make it part of this opinion wherein it stated the following:

"Cua has assigned various other errors which for one reason or another are waived:

refusing tendered instruction No. 8 and giving of instruction No. 5, but Cua agreed to the giving of the proposed instructions, *Record* at 1711–12; giving of instruction No. 2 but cites no authority, A.R. 8.3(A)(7); giving of tendered instructions No. 6 (as modified), 7, and 8 but fails to set them out in her brief or state objections made, A.R. 8.3(A)(7); the trial court's ruling on the motion for judgment on the evidence by treating it as a T.R. 12(B)(6) motion, but nothing in the record so indicates, A.R. 7.2(B); *Dager v. Indiana Suburban Sewers, Inc.,* (1970) 254 Ind. 137, 261 N.E.2d 858; *Hughes v. Hughes,* (1976) Ind.App., 356 N.E.2d 225; and any attack on the ruling on the motion for judgment on the evidence as to Count I fails because there is no citation to the record of any special damages, an essential element of Count I, A.R. 8.3(A)(7); failing to give the parties an opportunity to object to instructions out of presence of the jury, but no objection appears in the record, *Whisler v. Whisler,* (1904) 162 Ind. 136, 67 N.E.2d 984; *McQuirt v. Fearnou,* (1973) Ind.App., 301 N.E.2d 810; erring in allowing the defendants to amend their answer on the day of trial, but no objection was made and Cua refused an offer of a continuance, *Huff v. Travelers Indemnity Co.,* (1977) Ind., 363 N.E.2d 985; *Weenig v. Wood,* (1976) Ind.App., 349 N.E.2d 235; excluding a portion of Cua's testimony, but no authority cited as to why it was relevant, A.R. 8.3(A)(7); admitting testimony of Mathen, Klink and Sanchez and excluding exhibits D, E, F, S and T, but no specific objection was made, *Schoby v. Smith,* (1968) 142 Ind.App. 483, 235 N.E.2d 495; *Beatty v. Donaldson,* (1964) 136 Ind. App. 269, 200 N.E.2d 233; admitting exhibits E and F even though not on the exhibit list, but no authority cited, A.R. 8.3(A)(7)."

## VI.

"...—*Motion to Strike*—

■ Did the trial court abuse its discretion in denying Cua's motion to strike the defendants' answer as "sham and false"?

CONCLUSION—The trial court did not abuse its discretion in denying the motion to strike.

The defendants answered the complaint by a general denial. *See* T.R. 8. Cua claims that the general denial was submitted by way of answer after both defendants had been deposed and admitted the substantial truth of the first five paragraphs of the complaint; therefore, it was an abuse of discretion to deny her motion to strike because the defendants in good faith could not deny those paragraphs of the complaint. Instead, the trial court should have stricken the answer as "sham and false" pursuant to T.R. 11(A).

■ A trial judge has broad discretion in refusing to grant a motion to strike. *Apple v. Apple,* (1973) 158 Ind.App. 7, 301 N.E.2d 534. His decision will not be reversed unless prejudicial error is clearly shown. *Smith v. Midwest Insurance Co.,* (1972) Ind.App., 289 N.E.2d 788.

■ In determining whether the answer should be stricken as sham and false, the judge had to consider that the defendants could be defaulted if the answer were stricken. Default judgments are not favored. *Erdman v. White,* Ind.App., 411 N.E.2d 653, *supra; Beatty v. McClellan,* (1949) 119 Ind.App. 385, 88 N.E.2d 56. Further, Cua admits that the first five paragraphs of the complaint were only substantially correct. The defendants by stipulation at the pretrial conference admitted two of the paragraphs but qualified their admission of three others, and the only inconvenience which Cua asserts in the failure of the court to strike the answer is that she was compelled to try the case on its merits. The trial court's decision not to invoke the severe penalty of striking the answer under these circumstances was not an abuse of discretion.

## VII

...—*Evidence*—Did the trial court commit reversible error in admitting or excluding certain evidence?

CONCLUSION—The trial court did not commit reversible error.

## A.

■ Exhibit H, memoranda which summarized the log of time Cua spent in the ward, was admitted in evidence rather than the log book itself. Cua sees a violation of the best evidence rule. We do not.

■ The original of a document is not always the only evidence admissible to prove its contents. Indiana has long

recognized that unavailability of a lost writing will permit introduction of other evidence to prove the writing's content if the proponent satisfactorily demonstrates to the trial court that the original writing is lost. If he can show by a preponderance of the evidence that a diligent but unsuccessful search for the writing has been made in the place or places where it is most likely to be found, secondary evidence of the writing is admissible to prove content of the writing. *Howe v. Fleming,* (1889) 123 Ind. 262, 24 N.E. 238; *The Johnston Harvester Co. v. Bartley,* (1883) 94 Ind. 131.

*American United Life Insurance Company v. Peffley,* (1973) 158 Ind.App. 29, 301 N.E.2d 651, 657.

Here, the court apparently determined that the defendants had adequately demonstrated the original to be unavailable. The record shows that the court was informed that the original was not available, that pages were missing. *Record* at 1307. This was evidence from which the court could determine that the log was unavailable. There was no abuse of discretion in admitting the memoranda.

## B.

The next error alleged is that the trial court improperly permitted Davila to read from a memorandum which was an admonishment of Cua. Cua contends that the document could have been used at best to refresh Davila's memory, but permitting her to read from it was to admit hearsay.

■ Assuming that the document was hearsay, the admission of it would not be reversible error. The substance of the memorandum was that Cua had refused to

treat some patients. Testimony by Davila and others was to the same effect—that Cua had refused to see patients, even though the particular circumstances may have differed somewhat. This testimony was a small part of a larger plan to show that Cua did not spend enough time with the patients, that she did a poor job. The evidence was in substance, if not in form, cumulative. The erroneous admission of primarily cumulative evidence does not warrant reversal. *Shanks v. AFV [sic] Industries, supra* [416 N.E.2d 833]; *Loudermilk v. Feld Truck Leasing Company, supra* [358 N.E.2d 160]. The case cited by Cua, *Bradley v. Phelps,* (1970) 147 Ind.App. 349, 260 N.E.2d 894, is of no help to her. The court there refused to reverse because the evidence was cumulative. *Id.* at 355, 260 N.E.2d at 898."

Petition for Transfer is granted, and the opinion of the Court of Appeals in this case is vacated. The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.