## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 13 2017, 5:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Clifford T. Rubenstein
Carmel, Indiana

ATTORNEY FOR APPELLEE

J. Dustin Smith
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary Brian Plunkitt, <br> *Appellant-Defendant,* <br><br> v. <br><br> DLJ Mortgage Capital Inc., <br> *Appellee-Plaintiff* | July 13, 2017 <br><br> Court of Appeals Case No. <br> 32A01-1605-MF-951 <br><br> Appeal from the Hendricks County Superior Court <br><br> The Honorable Stephenie LeMay-Luken, Judge <br><br> The Honorable Matthew Hanson, Special Judge <br><br> Trial Court Cause No. <br> 32D05-1109-MF-522 |

**Altice, Judge.**

**Case Summary**

Gary Plunkitt appeals from the trial court's dismissal of his cross-complaint to quiet title to residential property located in Hendricks County (the Property). Plunkitt presents several issues for our review, which we restate as:

> 1. Did the trial court abuse its discretion in denying Plunkitt's request for attorney fees?

> 2. Did the trial court err in dismissing Plunkitt's cross-complaint to quiet title?

We affirm.

### Facts & Procedural History

As noted previously by this court in an unpublished memorandum decision, "[t]his case has a lengthy and complicated procedural history." *Aurora Loan Services, LLC v. Plunkitt*, No. 32A04-1403-MF-104, slip op. at 2 (Ind. Ct. App. Mar. 5, 2015) (*Aurora II*). This case adds to that history.

In *Aurora II*, this court set out the facts and procedural history leading up to the appeal in that case as follows:

> On December 15, 2006, Gary Plunkitt executed a promissory note and mortgage in favor of CIT Group ("CIT") and Mortgage Electronic Registration System ("MERS") on a residential property [the Property] located in Hendricks County. A few months later, in February 2007, Plunkitt defaulted on the note. In November 2007, CIT brought a foreclosure action against Plunkitt and [Robert] Imbody, a later land contract purchaser of the property. CIT attached a certified copy of the promissory note to its complaint. The note contained no endorsements or

allonges.[1]  CIT also attached to its complaint a copy of the mortgage, which named CIT as the lender and MERS as the mortgagee, and a copy of an assignment of mortgage from MERS to CIT.  The complaint alleged that CIT was the holder of the note and the assignee of the mortgage and that Plunkitt had defaulted on the terms of the note by failing to make payments due.

*Id.* at 2-3.  Here, a few points of clarification are necessary.  Plunkitt executed two promissory notes in favor of CIT and a first and second mortgage in favor of MERS to finance the purchase of the Property.  The first mortgage was in the original principal sum of $376,800 and recorded as Instrument No. 200700000720 (Instrument 720).  The second mortgage was in the original principal sum of $94,200 and recorded as Instrument No. 200700001500 (Instrument 1500).  CIT sought to foreclose on both notes and mortgages— Count One referenced Instrument 720 and Count Two referenced Instrument 1500.  Ultimately, CIT moved forward with Count I and indicated its desire not to further pursue the claim asserted in Count II.  In Count I, CIT asserted that Instrument 720 had been assigned to it and cited Exhibit D as evidence thereof.  Exhibit D, however, is a copy of the assignment of Instrument 1500 to CIT.  Instrument 720 was actually assigned to Aurora Loan Services, LLC.  Thus,

> [i]n May 2009, CIT petitioned the trial court to substitute Aurora as plaintiff in CIT's place.  The court granted the petition.

---

[1] Black's Law Dictionary 92 (10th ed. 2014) defines an "allonge" as a paper "attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."

Aurora filed an amended complaint asserting that it was the holder of the note and attached as an exhibit an assignment of mortgage from MERS to Aurora Loan Services, dated November 2, 2007.

On July 31, 2009, Plunkitt and Imbody filed a joint Indiana Trial Rule 12(B)(6) motion to dismiss, arguing that Aurora could not enforce the note unless it showed that it was in possession of the original note.[2] On the date of the hearing on the motion to dismiss, Aurora produced the original note, unendorsed, with no allonges attached to it. At the hearing, Aurora requested and received additional time to respond to the motion to dismiss. Three months later, in October 2009, Aurora filed its response to the Defendants' motion to dismiss. To its response, it attached for the first time an "Allonge to Note" which purported to show that CIT had endorsed the note to Aurora. Aurora also argued, as an alternative theory, that it was entitled to enforce the note as a non-holder transferee pursuant to Uniform Commercial Code ("U.C.C.") section 3-301(2), codified at Indiana Code sections 26-1-3.1-301(2).

Plunkitt and Imbody filed a motion to strike the purported allonge and Aurora's new theory of recovery, emphasizing that the undated allonge had not been produced or even mentioned during the nearly two years of litigation of the matter and that Aurora's alternative theory of recovery was outside the scope of the pleadings. The trial court agreed with the Defendants and struck the allonge and the alternate transferee argument. The court then granted the Defendants' motion to dismiss, noting that "striking having occurred, evidence that [Aurora] is the holder of the Note that is the basis of litigation in the within cause is totally lacking." Aurora moved to file a second amended complaint,

---

[2] It appears as though CIT was still the holder of the original promissory note, not Aurora.

and the trial court denied the motion. Aurora did not appeal the dismissal of its November 7, 2007 complaint.

In September 2011, nearly two years after the trial court granted the Defendants' motion to dismiss in the first cause of action ("*Aurora I*"), Aurora filed another complaint under a separate cause number in the same superior court. The complaint sought to enforce the note pursuant to Indiana Code section 26-1-3.1-301 and alleged the same or substantially similar facts as the complaint filed in *Aurora I*. To the complaint, Aurora attached both the allonge stricken by the trial court in *Aurora I* and a second allonge, which purported to contain a blank endorsement of the note by Aurora.

On November 1, 2011, Plunkitt and Imbody filed a motion for a more definite statement, noting that Aurora failed to state under which legal basis in Uniform Commercial Code section 301 it sought to enforce the note. Aurora amended its complaint on December 7, 2011, asserting that it was the note's holder pursuant to U.C.C. section 301(1), codified at Indiana Code section 26-1-3.1-301(1).

On January 12, 2012, Plunkitt and Imbody filed a joint motion to strike both allonges and to dismiss the case pursuant to Trial Rule 12(B)(6), Trial Rule 12(B)(8), and principles of res judicata. The trial court held a hearing on the Defendants' motion to dismiss on December 5, 2013. At the hearing, counsel for Aurora informed the trial court that Aurora Loan Services had been dissolved and noted that it had filed a motion to substitute DLJ Mortgage [DLJ] in Aurora's place as plaintiff. The trial court held Aurora's motion to substitute plaintiff in abeyance pending the court's ruling on the Defendants' motion to strike and motion to dismiss.

On December 9, 2013, based in part on the *Aurora I* court's order regarding the purported allonge, the trial court granted the Defendants' motion to strike the allonges and dismissed the complaint pursuant to 12(B)(6), finding that "Aurora is still not a party with any provable right to proceed against the Defendant." The trial court denied the Defendants' motion to dismiss pursuant to 12(B)(8) and principles of res judicata, noting that "the issue of whether default has occurred is still a matter that can be heard, but must be pursued by a correct Plaintiff" and that "the prior matter that was dismissed was done so based on the fact that [Aurora] could not prove that they had a right back then any more than they can prove they have a right now."

Aurora filed a motion to correct error on January 9, 2014. In its motion, Aurora argued that the trial court failed to apply the proper standard when striking the two allonges and in determining that Aurora was not entitled to enforce the note and that the trial court should have converted the Defendants' motion to dismiss to a motion for summary judgment. Aurora also requested leave to file a second amended complaint to assert an alternative theory of recovery based on Indiana Code sections 26-1-3.1-301(2) and -301(3). The trial court denied Aurora's request for leave to file a second amended complaint and denied Aurora's motion to correct error.

*Id.*, slip op. at 3-6 (record citations omitted).

[5] Aurora appealed the trial court's decision and on March 5, 2015, in a memorandum decision, this court affirmed the trial court's striking of the allonges, denial of Aurora's motion to amend its complaint, and dismissal of

the complaint pursuant to T.R. 12(B)(6).[3]  On or about May 27, 2015, Plunkitt requested a hearing on his pending motion for attorney fees that was previously filed on April 11, 2014.[4]  In that motion, Plunkitt claimed that U.S. Bank National Association (U.S. Bank)[5] and Aurora should be held jointly and severally liable for his attorney fees.  Contemporaneous with his request for a hearing, Plunkitt filed a notice of his intent to file a cross-complaint to quiet title based on DLJ's filing of an Affidavit Regarding Lost or Misplaced Assignment[6] that created a cloud on Plunkitt's title.

[6]  The trial court ultimately held a hearing on the issue of attorney fees on December 14, 2015.  On December 22, 2015, the trial court issued its order denying Plunkitt's request for attorney fees.  The court concluded that "it is clear from prior rulings of this court that U.S. Bank has not been a named plaintiff and . . . was not the party that presented the action that was thereafter dismissed pursuant to a 12(b)(6) order on December 9, 2013."  *Appellant's Appendix Vol. 2* at 26.  The court's denial was noted on the chronological case

---

[3] The Court of Appeals' decision in *Aurora II* was certified by the Clerk of the Court on April 17, 2015.

[4] The trial court stayed this matter pending Aurora's appeal.

[5] U.S. Bank was appointed as trustee for SASCO, a mortgage loan trust in which Plunkitt's first mortgage was pooled with other mortgage loans. U.S. Bank acted as the trustee for SASCO until SASCO was dissolved.  Plunkitt maintains that Aurora and other entities sought to be substituted as Plaintiffs in this action acted as servicers of the loan trust, and hence, were agents of U.S. Bank.  In this foreclosure action, U.S. Bank was named as a defendant on account of its interest in the form of a foreclosure judgment rendered in another court against Plunkitt.  Plunkitt asserts that U.S. Bank, although not the named plaintiff, is the entity calling the shots behind the foreclosure action(s).

[6] This affidavit was recorded on May 9, 2014.

summary on January 5, 2016. On February 4, 2016, Plunkitt filed a motion to correct error and a second motion for attorney fees and/or sanctions against the law firm representing the plaintiffs. The trial court denied Plunkitt's motion to correct error on February 5, 2016, and on February 17, 2016, the court entered an amended/supplemental order denying Plunkitt's request for attorney fees and sanctions against the law firm.

[7] On December 10, 2015, Plunkitt filed a "Complaint to Quiet Title by Counterclaim/Cross-Claim/Third Party Plaintiff" in the now-dismissed foreclosure action. Plunkitt maintains that he acquired title to the Property by general warranty deed from the previous owner and that he then sold the Property to Imbody pursuant to a Land Contract. Imbody fulfilled the land contract, and thus, Plunkitt is now obligated to convey marketable title to Imbody, free and clear of all liens and encumbrances. On February 17, 2016, DLJ, having been substituted for Aurora as plaintiff in the underlying action, filed an answer as well as a motion to dismiss Plunkitt's quiet-title cross-complaint. On March 31, 2016, the trial court issued an order granting DLJ's motion to dismiss. In its order, the trial court[7] explained:

> 1) Since this case was completed after appeal and hearing on motion for attorney fees this court has been inundated with

---

[7] We commend the trial court for its painstaking review of record herein and its thorough and well-thought out order.

paperwork that has not been dated or appropriately sent to this particular court.

2) The court has received multiple documents without date stamps.

3) The court has received multiple documents with date stamps but on dates well after they were apparently filed.

4) The court has not received several documents that have apparently been filed in Hendricks County and that appeared on the CCS but that were never sent to the court.

5) That after the court finally was able to piece together all of the documents on or around March 23, 2016, it is now able to make a cogent order.

6) That on December 14, 2015 Plunkitt filed a Complaint to Quite Title against several parties.

7) This court received a Motion for Default Against Seven Parties on an unknown date as the courts [sic] copy is not stamped.

8) The court granted the Motion for Default on February 29, 2016.

9) On February 17, 2016[,] the plaintiff [DLJ] filed an Answer, Affirmative Defenses and Motion to Dismiss Complaint to Quiet Title.

10) Thereafter Plunkitt requested more time to reply to the Motion to Dismiss which was denied.

11) Thereafter, the court received an undated Plunkitt's Response to Motions to Strike and Dismiss filed by [DLJ] as well as proposed orders.

12) That the court has read through the Motions and Responses.

13) That initially DLJ appropriately points out that this new complaint should be dismissed under Trial Rule 12(F).

14) In particular, when this court finalized its' [sic] order, the appeal was returned, and the attorney fee matter was resolved, the issue before this court was finalized.

15) That secondarily, this finding is based on the fact that if there was a counterclaim to be had by the defendants in this action they must have filed such at the time this matter was being heard before the court.

16) It is completely disingenuous to believe that Plunkitt did not know of an issue possibly regarding a quiet title action and that should have been filed as part of the ongoing dispute, before the issue was handled by the court and further on appeal.

17) As such, this Complaint to Quiet Title must be dismissed.

18) Second, even if the Complaint was not required to be filed by way of counterclaim, the court agrees this issue is not for this case and while it may be returned to this venue if properly filed, it is not so properly filed in this case.

19) Therefore, pursuant to Trial Rule 12(B)(3), this is not the proper venue for this particular claim to be filed, if a claim can be made at all.

20) Finally the court also agrees with dismissal under both 12(B)(1) and 12(B)(6) for . . . lack of jurisdiction and failure to state a claim upon which relief can be granted.

21) As stated in previous orders of this court, the court did not find a mortgage does not exist, merely that the proper plaintiff has yet to come forward to prove and recover.

22) As such, the claim made by Plunkitt is non-resolvable in the manner he is seeking and must be dismissed pursuant to those rules.

*Appellant's Appendix Vol. 2* at 31-33. Plunkitt now appeals.

## Discussion & Decision

### 1. Attorney Fees

[8] Plunkitt argues that the trial court abused its discretion in denying his request for attorney fees. When reviewing an award or denial of attorney fees, we note that the trial court is empowered to exercise its sound discretion, and any successful challenge to its determination must demonstrate an abuse thereof. *Delgado v. Boyles*, 922 N.E.2d 1267, 1270 (Ind. Ct. App. 2010) (citing *Carter-McMahon v. McMahon*, 815 N.E.2d 170, 179 (Ind. Ct. App. 2004)). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*.

[9] Generally, Indiana follows the "American Rule," whereby parties are required to pay their own attorney fees absent an agreement between the parties,

statutory authority, or rule to the contrary. *Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009), *trans. denied*. Ind. Code § 34-52-1-1 permits a trial court to award attorney fees if it finds that the action was litigated in bad faith or that the claim or defense pursued was frivolous, unreasonable, or groundless.

[10] Plunkitt sought an award of attorney fees against U.S. Bank. As noted by the trial court, U.S. Bank was not a named plaintiff and was not responsible for bringing the second foreclosure action that was dismissed pursuant to Ind. Trial Rule 12(b)(6). The trial court therefore denied Plunkitt's request for attorney fees.

[11] On appeal, Plunkitt argues that even though U.S. Bank was not the named plaintiff, U.S. Bank could have been found to be personally liable for his attorney fees as the trustee for SASCO. Plunkitt maintains that Aurora was at all times acting as a servicing agent for U.S. Bank and was pursuing the foreclosure action at the behest of U.S. Bank. In his motion requesting attorney fees, Plunkitt acknowledged that U.S. Bank had "never personally appeared in the action," but nevertheless asserted that U.S. Bank could be found liable under a theory of vicarious liability for the acts of its agents, i.e., Aurora, its successor, and the law firm representing the plaintiffs in the foreclosure action. *Appellant's Appendix Vol. 3* at 42.

[12] Plunkitt's argument that U.S. Bank can be held personally liable for his attorney fees because U.S. Bank is trustee for SASCO is based upon his theory that U.S. Bank was pulling the strings and directing Aurora in both foreclosure actions.

Plunkitt has presented no evidence to support his claims other than his bald assertions. As found by the trial court, there is nothing in the record that suggests U.S. Bank was in any way responsible for initiating or pursuing the foreclosure actions. Plunkitt has not established that the court's finding in this regard was clearly erroneous. The trial court did not abuse its discretion in denying Plunkitt's request for attorney fees as against U.S. Bank.

[13]  Plunkitt next asserts that because the foreclosure actions were frivolous, unreasonable, and groundless, the trial court should have awarded him attorney fees. Again, Plunkitt baldly asserts that Aurora, as the named plaintiff, created an assignment of mortgage document "just to conceal from the trial court, the true date when Aurora supposedly obtained its interest." *Appellant's Brief* at 33 (emphasis in original). He also suggests that Aurora intentionally concealed its relationship with U.S. Bank. Aside from Plunkitt's theories, there is no evidence in the record before us to support Plunkitt's claims that U.S. Bank was pulling the strings and that Aurora intentionally tried to conceal its relationship with U.S. Bank. The trial court was not required to credit Plunkitt's claims as grounds for an award of attorney fees.

[14]  Plunkitt also points to the trial court's rulings striking the allonges in both *Aurora I* and *Aurora II* as evidence that the actions were frivolous, unreasonable, and groundless.[8] Plunkitt overlooks the fact that the trial court's rulings were

---

[8] We note that Plunkitt did not file a motion requesting attorney fees or sanctions following the dismissal of the *Aurora I*, so any request for attorney fees based on that action is untimely.

procedural. In striking the allonges in *Aurora II*, the trial court relied upon its decision in *Aurora I* striking the allonges on the basis that they were first produced over two years into the litigation. The trial court did not make any substantive findings that would support a conclusion that the foreclosure actions were groundless. To the extent Plunkitt suggests he was entitled to an award of attorney fees because he was successful in both foreclosure actions, he is mistaken.

[15] Contemporaneous with his motion to correct error following the denial of his motion for attorney fees, Plunkitt filed a motion for attorney fees and/or Rule 11 sanctions against the law firm representing the plaintiff. In its original order denying Plunkitt's request for attorney fees as against U.S. Bank, the trial court noted that the law firm had been "less than forthcoming/comprehensible" as to what entity was being represented and indicated that the law firm made the matter more confusing. *Appellant's Appendix Vol. 2* at 25. The trial court made this finding after painstaking review of the record. Having such insight, the trial court nevertheless denied Plunkitt's request for attorney fees against the law firm. Plunkitt has not demonstrated that the trial court abused its discretion.

### 2. Dismissal

Plunkitt argues that the trial court erred in dismissing his cross-complaint to quiet title that he filed under the foreclosure cause number after the trial court dismissed the matter with prejudice upon his motion. The trial court determined that dismissal was appropriate on several bases. We note that the

trial court has broad discretion in ruling on a motion to strike a pleading and its decision will not be reversed unless prejudicial error is clearly shown. *Cua v. Ramos*, 433 N.E.2d 745, 752 (Ind. 1982).

[16] Ind. Trial Rule 12(F) provides:

> Upon motion made by a party before responding to a pleading, or, if no responsive pleading is permitted by these rules, upon motion made by a party within twenty [20] days after the service of the pleading upon him or at any time upon the court's own initiative, the court may order stricken from any pleading any insufficient claim or defense or any redundant, immaterial, impertinent, or scandalous matter.

A motion to strike is properly utilized to strike "any insufficient claim or defense." In other words, a T.R. 12(F) motion to strike is a proper device to attack the sufficiency of the complaint to state a redressable claim. *Anderson v. Anderson*, 399 N.E.2d 391, 407 (Ind. Ct. App. 1979).

[17] The basis for the trial court's ruling under T.R. 12(F) was that after this court issued its decision in *Aurora II*, the issue before the court was "finalized." *Appellant's Appendix Vol. 2* at 32. Indeed, in *Aurora II*, this court affirmed the dismissal with prejudice of Aurora's foreclosure complaint and the opinion was certified on April 17, 2015. The only matter left to be addressed concerned Plunkitt's request for attorney fees that had been stayed pending the outcome of the appeal. There was no continuing matter in which to file a cross-complaint.

[18]    In claiming that the trial court's determination in this regard was erroneous, Plunkitt simply asserts that he provided notice on two separate occasions that he "would be filing a subsequent claim" and that Aurora never objected to such notice. *Appellant's Brief* at 36. We observe that one such "notice" was made during a conversation off the record. The second "notice" was a written notice setting forth Plunkitt's "intention to file a Count/Third Party Complaint naming [DLJ] as Defendant."[9] This written notice was filed on May 22, 2015, which was after *Aurora II* was certified.[10] As the trial court found, the matter was already "finalized" before Plunkitt filed his cross-complaint. *Appellant's Appendix Vol. 2* at 32.

[19]    Plunkitt has also not established any prejudice from the trial court's dismissal of his cross-complaint to quiet title. Indeed, the trial court indicated in its findings related to venue that Plunkitt's cross-complaint to quiet title is "not . . . properly filed through this case." *Appellant's Appendix 2* at 32. Plunkitt is not foreclosed from filing a new action. Plunkitt has not established that the trial court abused its discretion in dismissing his cross-complaint to quiet title insofar as it was filed in the foreclosure action after the complaint to foreclose was dismissed with prejudice upon Plunkitt's motion.

---

[9] Aurora had filed an Amended Motion to Substitute DLJ as the named plaintiff, but the trial court did not rule on such motion due to dismissal of Aurora's foreclosure complaint. DLJ was therefore not a party to the action at that time.

[10] Plunkitt did not file his cross-complaint to quiet title until December 2015.

Judgment affirmed.

Riley, J. and Crone, J., concur.