PETITIONER APPEARING PRO SE:
**OVIDIU CICEU**
Vincennes, IN

ATTORNEYS FOR RESPONDENT:
**NICHOLAS M. BRADY**
LEWIS WAGNER & TRIMBLE

**SARAH L. SCHREIBER**
BARRETT MCNAGNY LLP

FILED
Oct 24 2025, 12:14 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| OVIDIU CICEU, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 24T-TA-00016 |
| ) | |
| KNOX COUNTY ASSESSOR, ) | |
| ) | |
| Respondent. ) | |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**October 24, 2025**

MCADAM, J.

Both parties believe the Indiana Board of Tax Review erred when it reduced Ovidiu Ciceu's 2023 property tax assessment from $153,600 to $111,000. Ciceu contends that the assessment should have been reduced further because he believes the Board failed to consider an appraisal referenced by Ciceu in his testimony at the evidentiary hearing. The Assessor believes the initial value was correct and claims that the Board's rejection of his sales comparison valuation implies a new legal standard requiring an expert appraisal to succeed in valuation appeals. After reviewing the

certified record and the arguments properly before it, the Court finds that the Board made no reversible error, properly applied the law, and correctly considered the evidence. The Court also rejects as untimely two arguments raised by Ciceu for the first time in his reply brief and denies the Assessor's motion to strike portions of Ciceu's reply brief.

### FACTS AND PROCEDURAL HISTORY

Ciceu appeals the property tax assessment on his residence for tax year 2023 of $155,900. He owns a two-story Victorian-style brick house located in Vincennes, Indiana. The property has 5 bedrooms and 1.5 bathrooms, no air conditioning, and is heated with a coal or wood-burning stove.

Believing his 2023 assessment to be too high, Ciceu appealed the assessment to the Knox County Property Tax Assessment Board of Appeals (the "PTABOA"). The PTABOA held an administrative hearing on the appeal and reduced the assessed value of Ciceu's property to $153,600. This reduced value nonetheless represented an increase of over 38% from the prior year's assessment of $111,000. The PTABOA offered limited explanation for this value, stating only that "the change in assessed value is attributed to the annual ratio study." (Cert. Admin. R. at 4.)

Dissatisfied with this result, Ciceu appealed next to the Indiana Board of Tax Review. A hearing was held on the matter at which each party offered evidence to prove the value of Ciceu's home. The Assessor presented a valuation report that he created himself in which he compared the characteristics of Ciceu's property with five nearby properties that were recently sold and adjusted for relevant differences. The Assessor's report concluded to a value of $153,600. Ciceu responded by arguing that he was being

treated unfairly by the Assessor due to his past romantic involvement with the prior assessor. He also argued that his property was not being treated the same as other neighboring properties and attempted to prove the value of his home using an appraisal commissioned by the Assessor in Ciceu's prior appeal of his 2022 assessment. He testified that the appraisal valued his home at $95,000 based on an exterior review, but he did not submit a copy of the appraisal into evidence.

In its final determination, the Board reduced Ciceu's assessment to the prior year's assessment of $111,000 because it found that neither party had proven the value of the home. The Board found that the Assessor's valuation fell short because his adjustments to the comparable properties lacked support with reliable, market-based evidence and thus did not comply with generally accepted appraisal principles. Likewise, the Board found that Ciceu failed to provide reliable, market-based evidence supporting any value for his property. The Board noted that, although Ciceu "offer[ed] some testimony" about a prior appraisal relating to his 2022 assessment appeal, it could not rely on the appraisal because it was "not in the record." (Cert. Admin. R. 115 ¶ 33.) Finding that neither party offered reliable evidence of value, the Board applied the burden-shifting rule in Indiana Code § 6-1.1-15-20 and reverted the assessment to the prior year's value.[1]

Following the Board's decision, Ciceu timely filed his petition for review with this Court. As part of his reply brief, Ciceu attached four exhibits that were not presented to

---

[1] The Board also interpreted Ciceu's claim of being targeted for a higher assessment due to his past romantic involvement as a challenge to the uniformity and equality of his assessment. Ultimately, the Board found this claim failed due to the lack of market data and the lack of a statistically reliable sample of properties. Ciceu does not raise a uniformity and equality argument on appeal.

3

the Board. The Assessor filed a motion to strike these exhibits, which the Court decided to resolve alongside the merits of the case.

## STANDARD OF REVIEW

This Court's review of Indiana Board decisions is governed by Indiana Code § 33-26-6-6, which closely mirrors the language governing judicial review of administrative decisions from Indiana's Administrative Orders and Procedures Act. *Compare* IND. CODE § 33-26-6-6(e) (2025), *with* IND. CODE § 4-21.5-5-14(d) (2025). Under Indiana Code § 33-26-6-6, the party seeking to overturn a final determination of the Board bears the burden of demonstrating its invalidity. I.C. § 33-26-6-6(b). Challengers must demonstrate that they have been prejudiced by a final determination of the Board that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. I.C. § 33-26-6-6(e). The Board's legal conclusions are reviewed *de novo* and its factual determinations are afforded deference when they are supported by substantial and reliable evidence. *Majestic Props., LLC v. Tippecanoe Cnty. Assessor*, 241 N.E.3d 642, 644 (Ind. Tax Ct. 2024) (*citing Indiana Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 375 (Ind. 2017)).

## DISCUSSION

In this case, the Court must make three determinations: (1) what facts this Court may consider, (2) what arguments this Court may consider, and (3) whether the Board erred in reverting the subject property's assessment to that of the previous year. As to

4

the first, the Court will not consider exhibits outside the certified record, as none have been shown to qualify for the statutory exception allowing such consideration. As to the second, the Court finds that Ciceu forfeited arguments that he untimely raised for the first time in his reply brief. And as for the third, the Court affirms the Board's determination, as neither party demonstrates a prejudicial error by the Board.

**Exhibits to the Petitioner's Reply Brief Will Not Be Considered**

The Assessor asks this Court to strike from the record four exhibits that Ciceu included with his reply brief—(1) two property record cards for other properties, (2) a list of appeals from Knox County to the Board, (3) portions of an unidentified appraisal report, and (4) a contract for legal services and a related invoice between the Assessor and her counsel.[2] The Assessor argues that these exhibits should be stricken because the material is scandalous or impertinent and the Court cannot consider them due to statutory limits on its review power. While the Court agrees that it cannot consider these exhibits because they are not part of the certified administrative record, the Court declines to strike the exhibits because it is unnecessary at this time.[3] The continuing presence of the exhibits will not burden the litigants at this late stage in the proceeding because briefing and argument have concluded.

This Court's review of final determinations issued by the Board is limited. *Snyder v. Dearborn Cnty. Assessor*, 248 N.E.3d 1277, 1281 (Ind. Tax Ct. 2024). When reviewing the Board's determinations, the Tax Court is not acting as a trier of fact and is

---

[2] The Assessor also moves to strike portions of the reply brief which relate to the four exhibits in question. For simplicity, the Court's references to these exhibits shall be understood to incorporate the related portions of Ciceu's reply brief.

[3] One page of the four exhibits at issue appears in the certified record. (Cert. Admin. R. at 65.) To the extent this Court relies on that document, it will rely on the version located in the record.

generally confined to the record of the Board's administrative proceedings. *Gold Coast Rand Dev. Corp. v. Lake Cnty. Assessor*, 197 N.E.3d 1274, 1279 (Ind. Tax Ct. 2022); *see also, e.g.*, *Idris v. Marion Cnty. Assessor*, 12 N.E.3d 331, 333 n.7 (Ind. Tax Ct. 2014) (declining to consider newly presented evidence). As the Assessor correctly notes, evidence not presented to the Board can only be considered under narrow, compound circumstances defined by Indiana Code § 33-26-6-5. Under the statute, only evidence that "could not, by due diligence, have been discovered and raised in the administrative proceeding" and is "needed to decide disputed issues regarding . . . [i]mproper constitution as a decision making body . . . grounds for disqualification . . . [or] [u]nlawfulness of procedure or decision making process" may be considered. IND. CODE § 33-26-6-5(b) (2007).

The Assessor argues, and the Court agrees, that Ciceu's exhibits fail to meet this narrow exception to the Court's review limitation, thus precluding the Court from considering the new evidence in the exhibits offered in Ciceu's reply brief. None of Ciceu's exhibits are necessary to decide an issue of improper constitution, disqualification, or unlawfulness of procedure or process. None of these exhibits were undiscoverable prior to the Board's administrative proceeding. And Ciceu filed no response to the Assessor's motion to strike arguing that these exhibits qualify for a statutory exception to this Court's general restriction limiting its review to the certified administrative record. Therefore, the Court will not consider these exhibits when ruling on the merits of this case.

Because the exhibits in question are outside of the certified administrative record and will not be considered by the Court in deciding this case, the motion to strike is

6

denied as moot. While a reviewing court does have the plenary power to strike portions of a brief, *Pitman v. Pitman*, 717 N.E.2d 627, 634 (Ind. Ct. App. 1999), the decision whether to take such action is afforded broad discretion, *Cua v. Ramos*, 433 N.E.2d 745, 752 (Ind. 1982). The Assessor does not claim that the existence of these exhibits in the record is prejudicial if the Court does not consider them in reaching its decision. The Court finds nothing inherently prejudicial about these exhibits and finds that they will have no effect on the outcome of the case.

**Ciceu's Constitutional and Administrative Claims in his Reply Brief Are Forfeited**

Ciceu also raises two arguments about the actions of the Assessor for the first time to this Court in his reply brief. First, Ciceu claims that the Assessor's differing treatment of him and his neighbors constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Second, Ciceu argues that the Assessor's continued litigation against him, and refusal to settle cases, even after Ciceu has repeatedly won at the Board, constitutes administrative overreach and improper use of funds by the county. Both arguments fail because they are not properly before the Court.

A party cannot make an argument for the first time in his reply brief; this has long been established practice in Indiana's reviewing courts. *State v. Marion Cir. Ct.*, 153 N.E.2d 327, 330 (Ind. 1958); *see also Naville v. Naville*, 818 N.E.2d 552, 553 n.1 (Ind. Ct. App. 2004) (citing Ind. R. App. Proc. 46(C)). A petitioner's reply brief is the last filing contemplated by the Tax Court's automatic brief schedule. *See* Ind. Tax Ct. Rule 3(G). Given that oral hearings are discretionary in this Court, a reply brief may be the last word on a topic which the Court must decide. "It is well settled in appellate practice that

questions not raised or discussed in appellant's original brief cannot be presented in appellant's reply brief." *Marion Cir. Ct.*, 153 N.E.2d at 330. Raising a new issue at such a time would violate the basic principles of fairness, leaving the respondent unable to make any argument regarding these issues. *See City of Richmond v. Pub. Serv. Comm'n*, 406 N.E.2d 1269, 1278 (Ind. Ct. App. 1980).

Ciceu does not reference the Constitution or the Assessor's improper use of funds in his initial briefing. Thus, allowing Ciceu to raise these issues in a reply brief would violate the basic principles of fairness by having this Court review an argument without both parties having the opportunity to discuss it. That Ciceu has chosen to represent himself cannot excuse the error. Self-represented litigants are "held to the same legal standards as licensed attorneys." *Dridi v. Cole Kline, LLC*, 172 N.E.3d 361, 364 (Ind. Ct. App. 2021) (citation omitted). Ciceu must therefore adhere to "the established rules of procedure and must be prepared to accept the consequences of [his] failure to do so." *Id*. (quoting *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016)). Therefore, the Court finds that Ciceu forfeited his right to raise these claims.[4]

**The Board Correctly Reverted the 2023 Assessment to the Previous Year's Value**

Both parties made presentations to the Board supporting their claimed value for

---

[4] Even if Ciceu had presented these arguments at the proper time, the Court notes that parties have a duty to walk the Court through every element of their analysis and cannot assume that the evidence speaks for itself. *See Clark Cnty. Assessor v. Meijer Stores LP*, 119 N.E.3d 634, 643 (Ind. Tax Ct. 2019). For example, the Equal Protection argument in Ciceu's reply brief merely asserts a violation, references two property record cards, and notes two differences between those properties and the subject property. The brief and exhibits contain no discussion of the legal standard for an Equal Protection violation, no attempt to relate the facts in this case to any applicable legal standard, and minimal comparison between the subject property and the comparable properties while also failing to examine what effect, if any, those differences would make for an Equal Protection claim. Failure to develop an argument leaves it subject to waiver. *See Wendt LLP v. Indiana Dep't of State Revenue*, 977 N.E.2d 480, 485 n.9 (Ind. Tax Ct. 2012).

the subject property and now criticize the Board for not finding sufficient support to reach their desired conclusion. However, in both cases, the Board identified critical supporting evidence missing from each party's presentation, which led the Board to find neither party's value persuasive. The Court finds no reversible error in the Board's actions.

*The Board Correctly Ignored an Appraisal Not in Evidence*

Ciceu claims that the Board erred by refusing to consider an appraisal of his property from a prior appeal that valued his home at $95,000. Ciceu testified about the appraisal during the hearing before the Board but did not attempt to place the appraisal report into evidence. The appraisal he references appears to be an appraisal commissioned by the Assessor as part of Ciceu's prior appeal of his 2022 assessment. According to Ciceu, the appraisal shows that his home was over assessed because the appraisal was based on an exterior review of his home and did not account for his lack of central heat or air conditioning. He contends that, once adjusted for the cost of installing those amenities (which he estimates at $60,000), the appraisal supports his requested assessment of $55,000. The Court concludes that Ciceu's claim fails because the Board correctly declined to consider the appraisal since it was only briefly mentioned by Ciceu in testimony and it does not appear in the certified record.

A final determination by the Indiana Board, like other administrative orders, must be "based on evidence produced at the hearing where there is an opportunity for all interested parties to offer evidence, cross-examine witnesses, and argue their positions." *Indiana C.R. Comm'n v. Wellington Vill. Apartments*, 594 N.E.2d 518, 527 (Ind. Ct. App. 1992) (quoting *Oriental Health Spa v. City of Fort Wayne*, 526 N.E.2d

9

1019, 1022 (Ind. Ct. App. 1988)), *trans. denied*. Documents and other evidence not placed in the record are not part of the case. *Id.*; IND. CODE § 6-1.1-15-4(j) (2020) ("Findings must be based exclusively upon the evidence on the record in the proceeding . . . ."). For the Board to consider the appraisal Ciceu referenced in passing, the appraisal report should have been submitted to the Board as evidence or Ciceu should have testified in detail about its contents. Only once the appraisal's contents are in evidence can the Board complete the necessary task of evaluating whether the appraisal proves the market value-in-use of the property.

Because the underlying detail of the appraisal's analysis was not in evidence, the Board correctly declined to consider this appraisal in valuing the property. The appraisal's contents were not in evidence as either an exhibit or as testimony, and Ciceu did not take the necessary steps to demonstrate its probative value. Because the Board lacked sufficient information about the appraisal, the Board was unable to evaluate the evidence and could not determine whether it produced a reliable valuation for the property.

*The Board Correctly Identified Legal Requirements the Assessor Failed to Meet*

The Assessor claims that the Board's rejection of his sales comparison analysis "effectively" requires an appraisal prepared by an expert appraiser. (Resp't's Resp. Br. at 12.) As the Assessor sees it, even though the Board says that it "do[es] not mean to imply that an appraisal by a licensed appraiser is required to prove a property's market value-in-use," the Board rejected his analysis precisely because he is only a Certified Level III Assessor-Appraiser and not an appraisal expert. (Resp't's Resp. Br. at 11–12 (quoting Cert. Admin. R at 114 ¶ 31).) The Court disagrees, finding that the Board did

10

not establish, implicitly or explicitly, an expert-appraiser requirement in its determination. Instead, the Board rejected the Assessor's sales comparison analysis because it found that the Assessor failed to prove that the analysis conformed with generally accepted appraisal principles.

To support his assessment, the Assessor presented a sales comparison analysis prepared by the Assessor himself. In his analysis, the Assessor selected five purportedly similar property sales and adjusted each sale to account for differences between the comparable properties and the subject property. He made adjustments for a variety of "factors such as above grade area, HVAC, basement, attic, garage, and grade." (Cert. Admin. R. at 110 ¶ 16. *See* Cert. Admin. R. 125–31.) He then quantified the adjustments using cost tables from Indiana's mass appraisal computer software system. The Assessor testified about why these sales were selected, what adjustments were made, and how the adjustments related the sale back to the subject property. Ultimately, the Assessor arrived at adjusted sale prices ranging from $127,880 to $202,108 and reconciled to an estimated value of $153,600 for Ciceu's home.

In reviewing the Assessor's analysis, the Board took issue with the Assessor's use of the cost tables from the mass appraisal system to adjust the comparable properties considered in his analysis. The Board anchored its review of the Assessor's sales comparison analysis in an expert appraisal treatise from The Appraisal Institute called "The Appraisal of Real Estate" that lays out a general statement of generally accepted appraisal principles. The Board acknowledged that, according to The Appraisal Institute, appraisers use several techniques to adjust sales, including adjustments related to the cost of installing or removing features. The Board explained,

11

however, that "the value added or lost by the presence or absence of an item may not equal the cost of installing or removing it . . . [because] 'the market dictates the value contribution of individual components to the value of the whole.'" (Cert. Admin. R. at 114 ¶ 30 (quoting THE APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE 392–93 (15th ed. 2020)).) Contrasting these principles with the Assessor's analysis, the Board found that the Assessor "did not show that using [the] cost tables was an appropriate way of adjusting comparables" or that the analysis was consistent with generally accepted appraisal principles. (Cert. Admin. R. at 114 ¶ 31.)

The Board's rejection of the Assessor's analysis is consistent with Indiana law. Property tax assessments are based on a property's "true tax value," which means the market value of a property for its current use. 2021 REAL PROPERTY ASSESSMENT MANUAL ("2021 Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2020)) at 2. By statute, true tax value is "determined under the rules of the department of local government finance." IND. CODE § 6-1.1-31-6(f) (2016). Those rules require market value-in-use to be determined "in accordance with generally recognized appraisal principles" and specifically identify "[s]tandard appraisal and valuation texts such as those published by the Appraisal Institute and the [International Association of Assessing Officers as] acceptable sources for determining such principles." 2021 Manual at 2–3. While true tax value may be discerned from an appraisal, an appraisal is not required. 2021 Manual at 3. Here, the Board determined that the Assessor failed to demonstrate that the adjustments used in his sales comparison analysis were applied in accordance with generally recognized appraisal principles. Conforming with these principles is necessary to prove true tax value. *See* 2021 Manual at 2; *see also Grabbe*

12

*v. Carroll Cnty. Assessor,* 1 N.E.3d 226, 231 (Ind. Tax Ct. 2013) ("[T]he probative value of an opinion depends on whether the proponent of that opinion has shown that he adhered to generally recognized appraisal principles in formulating the opinion."). While the Board did distinguish the Assessor's expertise from that of a licensed expert appraiser, that comparison was used to show that the Assessor's expertise should not be taken as evidence validating the use of cost tables for adjustment purposes. The Board found that the Assessor's certification as a Level III Assessor-Appraiser "shows expertise in mass appraisal and assessment regulations" but "does not necessarily show an expertise in the use of market-based evidence to value a specific property." (Cert. Admin. R. at 114 ¶ 31.) Stated another way, the Board found that the Assessor's assessor-appraiser certification did not qualify him as an expert in generally accepted appraisal principles. The Board's statement is an acknowledgment that, had the Assessor been a licensed expert appraiser, his testimony about the methodology he used to prepare his sales comparison analysis may have provided evidentiary support for a finding that the analysis was prepared in accordance with generally accepted appraisal principles. Absent that expertise, it was reasonable for the Board to conclude that the use of cost tables to adjust comparable sales in a sales comparison analysis lacked evidentiary support in light of the contrary authority found in The Appraisal of Real Estate regarding cost-based adjustments.

Accordingly, the Assessor is not entitled to relief as he has not refuted the Board's finding or demonstrated to this Court that his analysis comported with generally accepted appraisal principles. The Board's determination does not foreclose sales comparison analyses or other appraisals from certified assessor-appraisers like the

13

Assessor. It simply reaffirms the long-standing requirement that proponents of such analyses demonstrate that the analyses conform to generally accepted appraisal practice as required by law. The burdens that flow from that requirement derive from the statutes and regulations governing true tax value.

## CONCLUSION

The Court AFFIRMS the Board's final determination.